JAMES W. BEACH *et al.*

*v.*

FRANCIS B. PEABODY *et al.*

*Opinion filed October 19, 1900—Rehearing denied December 10, 1900.*

1. APPEALS AND ERRORS—*foreclosure decree is reviewable in Appellate Court.* A freehold is not involved in a foreclosure suit, and the decree therein should be taken to the Appellate Court for review.

2. SAME—*fact that pleadings raise constitutional question does not fix jurisdiction.* A mere allegation in a pleading that a statute is unconstitutional does not confer jurisdiction on the Supreme Court, unless the court can see that the question raised is one which may fairly be regarded as debatable.

3. SAME—*when effect of gold clause of mortgage is not presented for review.* The effect of a clause in a mortgage requiring payment in gold coin is not presented for decision, where the foreclosure decree merely requires the amount found due to be paid in dollars and cents, without specifying the kind of money.

4. PARTIES—*one loaning money as guardian may sue in his own name.* A bill to foreclose a trust deed made to secure the payment of a note endorsed to the complainant, as guardian, may be filed by the complainant in his own name, without stating for whom or in what character he sues.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is a bill, filed on February 8, 1899, by Francis B. Peabody as guardian of Edouard Renaud Comte Tyszkiewicz, and Elizabeth Marie Comtesse Tyszkiewicz, and as trustee, and James L. Houghteling, as successor in trust, both of Chicago, in the county of Cook and State of Illinois, against James W. Beach, Anna M. Beach, his wife, Henry B. Mason as sole surviving trustee under the last will of Roswell B. Mason, deceased, and Henry G. Miller, all of the same place, for the purpose of foreclosing a trust deed, dated February 13, 1894, executed by said Beach and wife of Chicago, Cook county, Illinois, party of the first part, to Francis B. Peabody, of the same place, party of the second part; conveying lots

numbered 1 to 32, both inclusive, in block 26, in East Washington Heights, to secure the payment of a principal note of the same date, signed by said James W. Beach, for the sum of $4500.00, payable in five years after date, to the order of himself, the said Beach, with interest at the rate of seven per cent per annum, payable half-yearly, to-wit, on the 13th days of August and of February in each year, and payable in the gold coin of the United States of America of the present standard of weight and fineness; which said several installments of interest were further evidenced by ten interest notes or coupons of the same date for $157.50 each. Said principal and interest notes are endorsed upon the backs thereof as follows: "Pay to the order of F. B. Peabody, guardian.—James W. Beach." A joint and several answer to the bill was filed by the appellants James W. Beach and Anna M. Beach, his wife. Henry B. Mason, as sole surviving trustee under the will of Roswell B. Mason, deceased, and Henry G. Miller also filed answers. The cause was referred to a master in chancery, who took testimony and made a report, finding generally in favor of the complainants in the bill, and that the material allegations of the bill were established by the proof. A supplemental bill was filed on March 10, 1900, for the purpose of suggesting to the court the death of Henry G. Miller, and to make his executors parties defendant in his stead. The said Beach and wife were not made parties defendant to said supplemental bill, but filed an answer to the same, to which replication was filed.

On April 6, 1900, the court below entered a decree, confirming the master's report, and finding that, on February 13, 1894, the appellee, Peabody, as guardian as aforesaid, loaned to appellant, James W. Beach, $4500.00, and that said notes and trust deed were executed by him for the purpose of securing the notes representing said loan, and the interest thereon. The decree found, that there was due to said Peabody, as guardian, $5619.00,

and ordered a sale of the property in default of payment thereof.

The present appeal is prosecuted from the decree of foreclosure so entered by the circuit court.

JAMES W. BEACH, for appellants.

EDMOND MCMAHON, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The bill filed in this case is merely a bill to foreclose a trust deed, or mortgage. A freehold is not involved in a suit to foreclose a mortgage, and, therefore, a decree of foreclosure should be taken for review to the Appellate Court, and not to this court. (*VanMeter* v. *Thomas*, 153 Ill. 65).

It is claimed, however, by counsel for the appellants, that the appeal is properly brought to this court upon the alleged ground, that the validity of a statute and the construction of the constitution are involved in this case. (Rev. Stat. chap. 110, sec. 88; 3 Starr & Cur. Ann. Stat. —2d ed.—p. 3114). The statute, which is alleged to be invalid and unconstitutional, is the Interest law of the State of Illinois. The joint and several answer of appellants alleges, "that the statute of the State of Illinois, relating to the recovery of interest upon and for the use of money loaned, was and is unconstitutional and void, in that the power to regulate the value of money is by the constitution of the United States of America solely delegated to the Congress of the United States; * * * that the Congress has not established or fixed a legal rate of interest for or upon money loaned."

Section 8 of article 1 of the constitution of the United States provides, in the fifth clause thereof, that Congress shall have power "to coin money, regulate the value thereof, and of foreign coin, and fix the standard

of weights and measures." Appellant, James W. Beach, asserts that the Congress of the United States has the power to regulate the rate of interest to be charged for money loaned, and that such power is involved and embraced in the power "to coin money and regulate the value thereof;" and that, therefore, the statute of Illinois, establishing a rate of interest, is invalid, and in violation of the Federal constitution. This contention is so unreasonable and far-fetched, that its advocacy cannot be regarded by the court as anything else than an attempt to confer jurisdiction over this foreclosure proceeding upon this court, and take it away from the Appellate Court. This attack upon the Interest law of the State, which has stood without question ever since the foundation of the State, is certainly a novel one, and, so far as we know, original with the present appellants.

The power "to coin money, regulate the value thereof and of foreign coin" has no reference, and by no possibility can have any reference, to the rate of interest to be charged for money loaned. The power thus conferred upon Congress is the power to coin money and regulate the value of the money so coined. It has been said that the power "to coin money" would, doubtless, include that of regulating its value, had the latter power not been expressly inserted. The power of regulating the value of money is a mere repetition of the words granting the power "to coin money." (2 Story on Const.—4th ed.—sec. 1117). By the power conferred, Congress may establish the value of domestic and of foreign coin. The object of the power thus conferred is to save the country from the embarrassments of a perpetually fluctuating and variable currency. "The power to coin money is one of the ordinary prerogatives of sovereignty, and is almost universally exercised in order to preserve a proper circulation of good coin of a known value in the home market." (2 Story on Const.—4th ed.—sec. 1118). The power to coin money and regulate the value thereof is the power

to coin money and "affix to it a public stamp and value."
(Ibid).    The grant of the power in question to Congress
was mainly to prevent "the danger of the circulation of
base and spurious coin connived at for local purposes, or
easily accomplished by the ingenuity of artificers, where
the coins are very various in value and denomination,
and issued from so many independent and unaccountable
authorities," as would be the case if the several States
had the right to coin money.    (Ibid. sec. 1357).

Interest is "a compensation, usually reckoned by per-
centage, for the loan, use or forbearance of money."
(11 Am. & Eng. Ency. of Law, p. 379).    In this country,
the allowance of interest "is sanctioned by the statutes
of all the States, and has been held to be entirely a crea-
ture of statute, and only allowed where so authorized."
(Ibid. pp. 379, 380).  Interest is allowed where there is an
express contract to pay it, limited by the statute against
usury; and it is also allowed as damages for default in
the payment of a debt, and as damages for the use or
benefit of another's money.    (Ibid. pp. 380-395).

The value of the use of money, or the rate of interest
which a lender is entitled to receive for the use of his
money, is an entirely different thing from the value of
money as coined by the general government, and as used
for the purposes of currency, or as a circulating medium.
The idea, that the statutes of all the different States
which regulate the rates of interest therein, are a viola-
tion of that provision of the constitution of the United
States, which confers upon Congress the power to coin
money and regulate the value thereof, is too fanciful to
be regarded as serious.    The bill of foreclosure, filed in
this case, makes no reference to the statute of the State
of Illinois in regard to interest; and the charge, that
such statute is in violation of the Federal constitution,
is made for the first time in the answer filed by the
appellants.    We do not think, that a serious debatable
question is properly raised here in regard to the consti-

tutionality of the statute in regard to interest. Counsel have no right to suggest, that a statute is invalid, in a pleading, merely for the purpose of ousting the jurisdiction of the Appellate Court, and conferring jurisdiction upon the Supreme Court. In *St. Louis Transfer Co.* v. *Canty*, 103 Ill. 423, we said: "It is not enough for counsel merely to say the validity of a statute is involved, to give us jurisdiction; for if that were the law, every case might be brought here upon a simple assertion of counsel, however absurd that assertion might be. The record must show that the validity of the statute is in good faith, and not simply pretendedly, involved, to give us jurisdiction on that ground."

Again, in *Chaplin* v. *Commissioners of Highways*, 126 Ill. 264, we said (p. 274): "While the mere allegation in a pleading that a given statute is unconstitutional will not necessarily raise a question as to the validity of such statute, yet, where it can be seen that the constitutional question raised is one which may be fairly regarded as debatable, we think the question of the validity of a statute becomes involved in the case, within the meaning of the statutes regulating jurisdiction of appeals." We can not say that such is the case here. From the authorities thus referred to two rules are deducible: *First,* the mere assertion of counsel that the validity of a statute is involved is not sufficient to give us jurisdiction; *second,* the mere allegation in a pleading, that a given statute is unconstitutional, will not raise a question as to the validity of such statute, unless the court can see that the constitutional question raised is one which may be fairly regarded as debatable. Both these rules are violated here by the attempt to raise a question as to the validity of the Interest law, and also by the attempt to raise the other questions hereinafter referred to.

Appellants allege in their answer, that so much of the statutes of the United States, as pretend to grant to private persons authority to contract for the payment

of a debt in gold coin of the United States, is uncon-
stitutional and void.  Our attention is not called to the
particular statute of the United States here referred to
otherwise than by a general reference to the statutes of
the United States.  But while it is true, that the notes,
secured by the trust deed in this case, provide for the
payment of the sums therein named in the gold coin of
the United States of America of the present standard
of weight and fineness, yet the decree of foreclosure, en-
tered by the court below, does not require the amount of
principal and interest, therein found to be due, to be paid
in gold coin, but simply requires that so many dollars
and cents be paid without reference to the particular
kind of money in which it is to be paid.  This being so,
the case at bar in this respect comes within the purview
of the announcements made in the cases of *Dorr* v. *Hun-
ter*, 183 Ill. 432, and *Rae* v. *Homestead Loan Co.* 178 id. 369.
In these cases, we held "that the alleged invalidity of a
mortgage contract, based upon the ground that it called
for payment in gold, cannot be considered on appeal from
foreclosure proceedings, where the decree merely finds
the amount due in dollars and cents, without requiring
the payment in any particular kind of money."  There-
fore, the validity of an act of Congress, authorizing the
payment of a contract in gold coin, is not involved in
this appeal.

Appellants make the further point, that this bill is
filed by Francis B. Peabody, as guardian of a count and
countess; that "count" and "countess" are titles of nobil-
ity; and, consequently, that the attempt to foreclose this
mortgage, given to secure money which was received by
the appellant, James W. Beach, is in some way an in-
fraction of the seventh clause of section 9 of article 1
of the constitution of the United States, and also of the
first clause of section 10 of said article 1.  Clause 7 of
said section 9 provides that "no title of nobility shall
be granted by the United States; and no person holding

188—6

any office of profit or trust under them, shall, without the
consent of the Congress, accept of any present, emolu-
ment, office or title of any kind whatever, from any king,
prince or foreign State." Clause 1 of said section 10 pro-
vides that "no State shall  *  *  *  grant any title of
nobility." It is difficult to see how these provisions of
the Federal constitution have any application here. If
it be true that the appellee, Peabody, is the guardian
of a count and countess, the foreclosure of a mortgage,
owned by the guardian of such count and countess, in no
way implies the granting of a title of nobility, either by
the United States, or the State of Illinois. If appellant,
Beach, has borrowed money from the guardian of two
persons of rank, common honesty requires him to pay
it back the same as though he had received it from a
guardian of two of the humblest wards in the common-
wealth of Illinois.

This bill is filed by Peabody as guardian, and as
trustee, and by Houghteling, as successor in trust. Both
Peabody and Houghteling are alleged in the bill to be
residents of the State of Illinois, nor is this allegation
denied by appellants. The loan of money, which was
here made to appellant, Beach, was made by Peabody,
guardian. When the loan was made, the money was in
the hands of such guardian, and was borrowed by ap-
pellant, Beach, from such guardian. By his endorsement
upon the notes, appellant, Beach, directed the money
therein named to be paid to the order of F. B. Peabody,
guardian; and he is thereby estopped from disputing the
ownership of the notes by Peabody, as such guardian,
and is equally estopped from denying Peabody's method
of proceeding to collect such notes. The notes belonged
to Peabody as guardian. He, therefore, had a right to
sue in his own name without stating in what character
he sued. The placing of the word, "guardian," after his
name was merely a *descriptio personœ.* Where notes are
payable to a guardian as such, and not to the wards, the

guardian has an undoubted right to bring a suit on the notes in his own name without stating for whom or in what character he sues. (*Baker* v. *Ormsby*, 4 Scam. 325; *Newhall* v. *Turney*, 14 Ill. 338).

In *Laycock* v. *Oleson*, 60 Ill. 30, we said: "It has been repeatedly decided by this court that where a note is made specifically payable to a party describing himself as administrator or guardian, such party may bring an action in his own name to recover the money secured thereby, and he will not be bound to prove that he was such administrator or guardian. Such words are held to be simply descriptive of the person and, therefore, immaterial." (See, also, *Wolf* v. *Beaird*, 123 Ill. 585).

In view of what has been said, the description of one of the complainants as the guardian of two members of a foreign nobility, if they were such members, was immaterial and unnecessary to a recovery in this case. Therefore, no debatable question arises upon this record as to the proper construction of the provisions of the Federal constitution in regard to titles of nobility, if such provisions were otherwise in any way applicable.

If there was a serious debatable question properly raised upon this record in regard to the validity of any State statute, or in regard to the construction of any provision of the constitution, it would be our duty to consider the various technical and somewhat trivial objections made to the action of the court below in rendering the decree here sought to be reviewed, but we are not able to discover that any such question is seriously and properly raised for our consideration.

Accordingly, the appeal in this case is dismissed; and the appellants will have permission to withdraw the record for the purpose of filing the same in the Appellate Court.                              *Appeal dismissed.*