VALENTINE WOLF

*v.*

ALEXANDER W. HOPE *et al.*

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. APPEALS AND ERRORS—*transcript of record imports absolute verity.* The transcript of the record, on appeal, is the sole, conclusive and unimpeachable evidence of the proceedings of the lower court.

2. SAME—*that no decree was entered cannot be shown by affidavit.* If the record, on appeal, shows a final decree, affidavits that no final decree was entered can be considered by the Supreme Court only as in support of a motion for a continuance to enable complaining party to apply to the lower court to amend the record.

3. SAME—*when validity of statute is involved.* Where, on appeal in an injunction proceeding, an inspection of the bill clearly shows that the validity of such statute is involved, it is not essential that the bill should in terms aver the statute is unconstitutional.

4. PARTIES—*city council is a unit.* A proceeding to enjoin a city council from doing an act which can be performed only by the entire body should be against the council as a unit, notwithstanding part of the aldermen have always voted against the performance of the act sought to be enjoined.

5. PLEADING—*what not ground for demurrer to a bill for injunction.* That an injunction was issued without notice and without any aver-

ment in the bill that complainant's rights would be unduly prejudiced if notice were given is not ground for demurrer, since such matter is not required by statute to be contained in the bill itself but may be shown by affidavit in support thereof.

6. COURTS—*judge of city court is a "municipal officer."* The judge of a city court is a "municipal officer," within the meaning of section 11 of article 9 of the constitution, providing that the compensation of no municipal officer elected or appointed for a definite term shall be increased or diminished during such term.

7. SAME—*city court is an inferior court of record.* A city court is an "inferior court of record," within the meaning of section 5 of the Fees and Salaries act, fixing the salaries of judges of inferior courts of record and prohibiting a change in such salary during the term of office of such judges.

8. CONSTITUTIONAL LAW—*the salary of judge of city court cannot be changed during term.* The legislature has no power to increase or diminish the salary of the judge of a city court during the term of office for which he was elected.

9. SAME—*act of 1901, fixing salary of judge of city court, applies only to judges thereafter elected.* Section 23 of the act of 1901, (Laws of 1901, p. 140,) fixing the salary of judges of city courts, applies only to judges whose terms of office began after the act took effect.

APPEAL from the Circuit Court of Madison county; the Hon. PAUL MCWILLIAMS, Judge, presiding.

This is an appeal from a decree of the circuit court of Madison county sustaining a demurrer to a bill for an injunction, dismissing the bill, which was filed by Valentine Wolf, a citizen and tax-payer of the city of Alton, and dissolving a temporary injunction which restrained Alexander W. Hope, as judge of the city court of the city of Alton, from receiving, and various officers of said city from allowing and paying to said Hope, as judge, any sum as salary in excess of $1500 per annum. It appears from the bill that the city of Alton has a population of 15,000; that a city court in and for that city had been established many years prior to July 1, 1901; that on Tuesday, March 5, 1901, Alexander W. Hope was elected judge of that court, and on March 12, 1901, qualified and was commissioned by the Governor of the State as judge of that court for a term of four years from and after

March 12, 1901; that his lawful salary on March 12, 1901, was $1500 per annum, which was to be paid out of the treasury of the city, and which compensation could not be increased or diminished during his term of office, and that he is not entitled to receive any salary in excess thereof; that for several months after his election and commission as such judge he received his salary on the basis of $1500 per annum; that beginning with the month of August, 1901, he presented bills to the city council for and received salary at the rate of $2000 per annum, or $166.66 per month, being $41.66 in excess of his lawful salary and being the rate fixed by the act of May, 1901, hereinafter mentioned; that he solicited the opinion of the Attorney General of the State of Illinois as to whether or not the judge of a city court in the State of Illinois, elected, qualified and commissioned prior to July 1, 1901, was entitled to an increase of salary during the term for which he was elected under and by virtue of an act in relation to courts of record in cities, approved May 10, 1901, (Hurd's Stat. 1901, chap. 37, sec. 262,) and was advised by said Attorney General, under date of June 28, 1901, that such judge was not entitled to such increase, and the letter of the Attorney General is set out at length in the bill; that on September 9, 1902, Judge Hope addressed to the city council a written communication containing the following:

"*To the Honorable Mayor and City Council:*

"GENTLEMEN—The condition which exists and has existed for several months in the city council, created by five aldermen, who entered that body with the avowed purpose and have formed a conspiracy to resist the operation of the law fixing the salary of the judge of city court, is a remarkable spectacle, stating it mildly, in this country of law. These five members were not satisfied with voting against the salary in the teeth of the opinion of the corporation counsel, in view of which they might have conceded that there was a chance for an honest

difference of opinion as to the validity of this law; but
they did not do this. This would not serve their lawless
purpose. On the contrary, they sought to intimidate the
nine other aldermen and prevent them from voting for
the law. They made threats of indictments against them,
and these aldermen, and certain newspapers acting with
them, put in false statements regarding their position
and reflecting upon their official character because these
nine aldermen would not enter a conspiracy to defeat the
law. This state of affairs is an outrage, and will not be
permitted to continue any longer. I have determined to
call a halt on these law-breakers; therefore I send this
communication to the city council, to inform you, espe-
cially these five members, of their official duty and the
penalty for a failure to perform it, and the law against
a conspiracy to do an unlawful act; also to notify these
aldermen, and certain newspapers acting with them, that
I will protect the nine aldermen doing their official duty,
obeying their official oaths and respecting the law, from
any further attacks on their official character. To ac-
complish this object I shall not hesitate to resort to the
harshest measures. 'Patience has ceased to be a virtue'
with you. The last legislature passed a city court law,
entitled 'Courts of record in and for cities.' Chapter 37,
Revised Statutes Ill. 1901, par. 262, sec. 23, is as follows:
'The judges of said courts shall receive an annual sal-
ary in cities having more than 8000 inhabitants and less
than 25,000 inhabitants, the sum of two thousand ($2000)
dollars."

The letter then contains the substance of certain
other sections of the statute, and continues:

"This city court law in force July 1, 1901, is the only
law on the statute books relating to city courts in the
State of Illinois under which any judge of such courts
can receive any salary or any city court can exercise any
power or jurisdiction. All other laws or parts of law
were repealed by this law. This is the law for city coun-

cils, for these five aldermen and every other public offi-
cer in the State. The excuse made by these aldermen for
obstructing the law, which conceals their real purpose
and deceives no one, is that the law is unconstitutional.
This is a question for the court—not for city councils
or the members thereof. There were about one hundred
lawyers in the House and Senate of the legislature that
passed this law, and the Governor that signed it was a
lawyer himself. How strange it seems that they were so
ignorant of the constitution and those five aldermen are
so wise about it. Mark what the Supreme Court of the
State of Illinois said to a public officer cited for a failure
to perform his official duty and obey the law, when he
answered that the law was unconstitutional.—*People* v.
*Salomon,* 54 Ill. page 45."

Here the letter sets out at considerable length the
opinion of this court in the *Salomon case,* and section 27
of the act on cities and villages, and sections 46 and 208
of the Criminal Code, which provide penalties for mal-
feasance and misfeasance by municipal officers and for
conspiracy to do an illegal act, and then continues:

"These aldermen may be prosecuted and convicted
under any and all of the above sections of the criminal
statutes.

"The five members of the city council whose miscon-
duct is under discussion are Messrs. Giberson, Noonan,
Gregory, Yager, Wegener. They entered the city council
with the avowed purpose and formed a conspiracy to nul-
lify that part of the city court act that fixes the salary
of the judge thereof. They have resorted to all kinds of
means and threats, even of indictment, to prevent the
other aldermen from voting for the salary of the judge
of such court. They, and certain newspapers acting with
them, have attacked and circulated false statements re-
flecting upon the official character of the aldermen who
followed the path of duty marked out by law and refused
to depart from it. This unseemly performance has been

kept up by them, without abatement, at every meeting of the city council for many months.

"Therefore take notice, the above named members of the city council, that your unlawful acts must cease. I propose to protect from any further attacks from you, or the newspapers acting with you, the nine aldermen who did their official duty and obeyed their official oaths when they voted for the salary of the judge of the city court, while you violated your official duty and your official oaths when you voted against it. I tell you in plain words that you cannot misunderstand, that you can no longer pursue your lawless course. If you attempt it you will be prosecuted to the fullest extent of the law.

"You pose as reformers in the city council without any character to support the role. You claim you are trying to find law-breakers and punish them. We have found five law-breakers in your persons. If you make it necessary, we will commence and punish you first. It is up to you now.     "Respectfully,     ALEX W. HOPE."

The bill avers that the tendency of the letter is to interfere with the members of the city council in the performance of their duty, and further avers that unless an injunction is issued, without notice, the city council will, on October 14, 1902, again allow the salary of the defendant, Judge Hope, in an excessive amount, and the same will be paid in due course thereafter by the city comptroller and the city treasurer; that notice has not been given because the time intervening prior to the meeting of the council is so short that it will not admit of the delay which would be occasioned by giving the notice.

Alexander W. Hope, the aldermen, (fourteen in number,) the mayor, the city treasurer and the city comptroller were made defendants. The bill was filed on October 13, 1902, and a temporary injunction issued restraining Judge Hope from receiving, and the city authorities from paying, any salary at a rate in excess of $1500 per annum. The five aldermen specifically named

in the letter of appellee, Judge Hope, filed an answer admitting the material averments of the bill, and stating that they had never voted for the allowance of any salary in excess of $1500 per annum and did not expect to do so. The remaining defendants filed demurrers, on the ground, first, that there is no equity in the bill; second, parties defendant are improperly joined; third, it is not shown by the bill or affidavits attached that rights of complainant will be unduly prejudiced if the injunction is not issued without notice.

Judge Hope made an application for a change of venue on the ground of the prejudice, as alleged by him, of each and every of the circuit judges in and for the circuit in which the county of Madison is situated. Thereupon the demurrer was heard by Hon. Paul McWilliams, judge of the city court of the city of Litchfield, presiding as judge of the circuit court of Madison county, upon the request of one of the judges of the latter court, and at the January term of that court the decree above mentioned was entered, and the complainant appeals to this court. The order allowing the appeal continues the temporary injunction in force.

BURTON & WHEELER, for appellant.

B. H. CANBY, B. J. O'NEILL, C. W. TERRY, and L. B. WASHBURN, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

A preliminary question is presented by a motion to dismiss the appeal, based upon two grounds, the first being that no final decree has ever been entered by the circuit court in this cause. It is sought to make this fact appear by affidavits filed here. The transcript of the record herein shows a final decree. The record, as exhibited to us by the transcript, imports absolute verity. For the purpose of disposing of the cause in this court

it is the sole, conclusive and unimpeachable evidence of
the proceedings in the lower court. (3 Cyc. p. 152; *Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 68 Ill. 576.)
Where the record of the court below is erroneous, in that
a judgment or decree has been entered of record which
was not actually pronounced by the judge, the correct
practice is to apply to the court below, upon proper notice, to have the record amended; and where it is made
to appear in this court, when the cause is pending here,
that it is probable such an amendment should be made
in the court below, the cause will be continued in this
court, when justice requires, until application can be ʻ
heard for an amendment of the record in the court below,
and until the amendment, if made, can be shown here by
an additional transcript. (*Bergen* v. *Riggs,* 40 Ill. 61; *Shipley* v. *Spencer,* id. 105.) But such a mistake in entering the
decree or judgment below is not a ground for dismissing
the appeal, and affidavits showing such a mistake will
only be considered in this court when filed in support of
a motion for a continuance which has been made in due
time, for the purpose of permitting the court below to
pass on the application of the complaining party.

The other ground upon which the motion to dismiss
is based is, that the court has no jurisdiction of this appeal because it is taken directly from the circuit court to
this court. The position of appellees is that the appeal
should have been to the Appellate Court, and that the
validity of a statute or a construction of the constitution
is not involved, for the reason that it is not expressly
stated in the bill herein that section 23 of the act approved May 10, 1901, which is section 262 of chapter 37
of Hurd's Revised Statutes of 1901, is unconstitutional
or invalid, and in support of this position we are referred
to *Beach* v. *Peabody,* 188 Ill. 75, *Chicago General Railway Co.*
v. *Sellers,* 191 id. 524, *Pearce* v. *Vittum,* 193 id. 192, and *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *McGrath,* 195 id. 104. An examination of these cases shows

that they do not go to this extent. They hold that a
case cannot be brought by appeal or writ of error di-
rectly to this court from the trial court on the ground
that it involves the validity of a statute or a construc-
tion of the constitution unless the record shows that such
question was in some way presented to the trial court
for its decision. An inspection of this bill clearly shows
that the cause involves the validity of a statute and a
construction of the constitution. This gives this court
jurisdiction without an express statement in the bill that
the statute in question is unconstitutional.

The motion to dismiss the appeal is therefore over-
ruled.

It is urged that there is a misjoinder of defendants,
for the reason that five aldermen who had persistently
voted against paying the increased salary are made de-
fendants, and that as the bill does not charge that they
were doing any illegal act or threatening to do an ille-
gal act, they should not have been joined with the nine
aldermen who were charged with doing an illegal act in
voting the increased compensation. Whenever the bill of
Judge Hope for his salary, which was presented monthly,
was allowed, the act of allowing it became the act of
the entire city council, whether the bill was allowed by
unanimous vote or by a mere majority of one, and if any
of the aldermen were proper parties defendant to this suit
it was lawful, in enjoining that body, to enjoin each and
every alderman. A city council is a unit. It cannot be
divided into two or more parts and one part restrained
from the performance of functions which can be per-
formed only by the entire body.

Another ground of demurrer is, that the injunction
was issued without notice and without any averment in
bill or affidavit that the rights of the complainant would
be unduly prejudiced if the injunction was not issued
without notice. This question is not raised by a demur-
rer. The averment said to be lacking might be omitted

entirely from the bill and contained in an affidavit filed therewith. It is manifest that a bill is not demurrable because it does not contain an averment which the statute provides it may contain, but which, under the statute, it need not contain. Under such circumstances it is not material to the cause stated by the bill. It is therefore unnecessary to determine whether, under the allegations of the bill, notice should have been given.

The question arising upon the merits is, can the salary of a judge of a city court, elected and commissioned in March, 1901, for a period of four years from the 12th day of that month, be increased during his term of office by virtue of an act approved May 10, 1901, and in force July 1, 1901, or is such increase prohibited by the constitution of the State?

By the provisions of sections 7, 16 and 25 of article 6, section 21 of article 4, section 23 of article 5 and section 10 of article 10, constitution of 1870, it is provided that the salaries or compensation of judges of the Supreme Court, judges of the circuit courts, judges of the superior court and the State's attorney of Cook county, members of the General Assembly, the executive officers of the State, including officers of all the public institutions of the State, and county officers, shall not be increased or diminished during the terms of such officers; and section 11 of article 9 of the constitution provides, "the fees, salary or compensation of no municipal officer who is elected or appointed for a definite term of office shall be increased or diminished during such term." The purpose of the constitutional convention evidently was to provide that the salary of no public officer holding place for a definite period under the laws of this State should be increased or diminished during his term of office; but it is urged that the judge of a city court is not within any clause of the constitution prohibiting an increase or decrease of salary during the term, and that, therefore, the legislature had the power to make a change in the

salary attached to that office during the term of the incumbent thereof. ·

City courts were erected under section 1 of article 6 of the present constitution, which reads as follows: "The judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns."

Under this provision of the constitution the legislature, in 1874, provided as follows: "The several courts of record now existing in and for cities, and such as may hereafter be established by law, in and for any city in this State, shall severally be styled 'The city court of (name of city),' and shall have concurrent jurisdiction with the circuit courts within the city in which the same may be, in all civil cases, and in all criminal cases except treason and murder, and in appeals from justices of the peace in said city; and the course of proceedings and practice in such courts shall be the same as in the circuit courts, so far as may be." (Hurd's Stat. 1899, chap. 37, sec. 240.) This section continued in force until July 1, 1901. Section 244 of the same act provided that the judges of such courts should be elected by the qualified voters of the said city in the same manner that the city officers are elected, and shall hold office for the term of four years and until their successors are elected and qualified; that they shall qualify and be commissioned in the same manner and be vested with the same powers and perform the same duties as circuit judges. Where a vacancy occurs, if the unexpired term exceeds one year, it shall be filled at a special election called by the same authority by which other city elections are called; if the unexpired term does not exceed one year the vacancy shall be filled by appointment by the Governor.

Judges of city courts are not specifically mentioned in the constitution, and it is earnestly insisted that they

are not municipal officers, within the meaning of section 11 of article 9 of the constitution, but that they are State officers because commissioned by the Governor and because their duties pertain to the State at large and to the general public. In our judgment this position is at variance with the law as stated by this court in the case of *County of Cook* v. *Sennott*, 136 Ill. 314, where it is held that the clerk of the probate court of Cook county is a municipal officer. He is an officer of a court of greater territorial jurisdiction than a city court, and which, as well as a city court, has jurisdiction of affairs which pertain to the State at large and to the general public. (Hurd's Stat. 1901, chap. 37, sec. 220.) He is commissioned by the Governor. (Sec. 229, same chapter.) The fact that the judge of a city court has the power to interchange with and perform the duties of judges of circuit, superior, county and probate courts throughout the State is without significance. County judges have a like power to exchange with each other throughout the State, but it would scarcely be contended that they thereby become State officers. We are unable to perceive any distinction that will enable us to hold that the judge of a city court is not a municipal officer while holding that the clerk of a probate court is a municipal officer.

The provisions of the constitution other than article 9 provided that the salaries of certain officers, including all the State officers and all officers holding places under the executive department of the State for a definite term, should not be increased or diminished during their term. In our judgment the provision quoted from section 11 of article 9 of the constitution was intended to include all officers not specifically mentioned in other provisions of the constitution, occupying offices created by the laws of the State in and for any of the political subdivisions of the State, and within the meaning of that section the judge of a city court is a municipal officer.

It is further urged, however, that prior to July 1, 1901, there was no law in this State fixing the salary of judges of city courts, and that the act of May, 1901, fixing the salary, was therefore a valid exercise of power, as it did not increase or diminish the salary during the term, and that all judges of city courts throughout the State were entitled to compensation at the rate fixed by that act from and after July 1, 1901, even though their terms of office had commenced prior to that time.

Section 3 of chapter 53 of Hurd's Revised Statutes of 1899, which is the Fees and Salaries act, fixes the salaries of judges of the circuit court and of the superior court of Cook county. Section 4 of that act provides the method by which such salaries shall be paid. Section 5 contains the following: "Judges of inferior courts of record in towns and cities shall be allowed, and receive in lieu of, all other fees, perquisites or benefits whatsoever, in cities or towns having a population not exceeding five thousand (5000) inhabitants, five hundred dollars ($500); and in cities or towns having more than five thousand (5000) inhabitants, fifteen hundred dollars ($1500), to be paid out of the city or town treasury: *Provided,* that in cities having a population of one hundred thousand (100,000) or more, the city or common council may give such additional compensation, to be paid out of the city or town treasury, to the judge or judges of such court, as shall be deemed reasonable, not exceeding a sum sufficient to make the entire salary five thousand dollars ($5000), which additional compensation shall be fixed prior to the election of such judge or judges, and shall be provided for in the annual appropriation ordinance of each year, and shall not be increased or diminished during the term of office of such judge or judges."

The argument is, that a city court is not an inferior court of record.

Section 1 of article 5 of the constitution of 1848 provided as follows: "The judicial power of this State shall

be and is hereby vested in one Supreme Court, in circuit
courts, in county courts, and in justices of the peace:
*Provided*, that inferior local courts, of civil and criminal
jurisdiction, may be established by the General Assem-
bly in the cities of this State, but such courts shall have
a uniform organization and jurisdiction in such cities."
Under the proviso to this section of that constitution,
various local courts were created by the legislature in
cities of the State, and it is to be observed that the
clause of the constitution just quoted denominates them
as "inferior" courts.

For the purpose of preventing inconvenience that
might otherwise arise from the alterations and amend-
ments of the organic law of the State, the constitution
of 1870 continued these local courts in existence by sec-
tion 5 of the schedule, which is a part of that document
and which reads as follows: "All existing courts which
are not in this constitution specifically enumerated, shall
continue in existence and exercise their present jurisdic-
tion until otherwise provided by law." (Hurd's Stat. 1901,
p. 75.) Under that section such local courts continued
in existence until July 1, 1874, when they were super-
seded by or merged into the city courts under and by
virtue of the act on city courts, which became effective
on that day, and the first section of which is section 240
of chapter 37 of Hurd's Revised Statutes of 1899.

It will be observed that the Fees and Salaries act was
originally approved March 29, 1872, and in force July 1,
1872, and the conclusion of the appellees is, that the term
"inferior courts of record," in section 5 of that act, there-
fore has reference only to the inferior local courts which
existed under the constitution of 1848, and which were
still in existence at the time of the passage of the Fees
and Salaries act in 1872, and consequently should not be
held to apply to the judges of our present city courts,
which compose a class of courts not then in existence, and,
as appellees conceive, not aptly described by the language

of section 5. This section, as originally passed, did not contain the proviso which it now contains and which is herein above set forth. (Hurd's Stat. 1874, chap. 53, sec. 5.) In 1877, after the passage of the City Court act, section 5, *supra,* was amended by re-enacting the entire section with the proviso inserted therein. The proviso authorizes the city council to increase the salary "to the judge or judges of such court." The term "such court" refers to the first part of the section, and means one of the "inferior courts of record." As there were no courts in existence to which this proviso could apply when it was enacted in 1877, or to which section 5 as re-enacted in that year could apply, except city courts, we think it apparent that the legislature, by the enactment of the proviso, made the language of section 5 applicable to city courts, even had it not been so applicable prior to that time, otherwise the enactment of the proviso was a useless thing.

Further, section 5 of the Fees and Salaries act, as passed in 1872, fixed the salaries of "judges of inferior courts of record in towns and cities." Section 1 of article 5 of the constitution of 1848 did not authorize the creation of courts of record "in towns." The only authority contained in that section of that constitution for the creation of inferior local courts required that they be established "in the cities of this State." Section 1 of article 6 of the constitution of 1870, on the other hand, authorized the establishment of "such courts as may be created by law in and for cities and incorporated towns." It follows, therefore, that in enacting section 5 of the Fees and Salaries act of 1872 the legislature must have had in contemplation judges of courts that might thereafter be erected under section 1 of article 6 of the constitution of 1870 as well as judges of "inferior local" courts which had been organized under the constitution of 1848 and which were then still in existence.

Disregarding, however, the reasoning consequent upon a consideration of the enactment of the proviso in

section 5 of chapter 53 of Hurd's Revised Statutes of 1901 and a comparison of the language of that section with the language of the sections from the constitutions of 1848 and 1870 last above referred to, we would still incline to the view that judges of city courts are within the language of section 5 as originally enacted. The term "inferior courts of record," as contained in that section, designates courts of record inferior to the circuit court and the superior court of Cook county, and while the city court is not an inferior court in the sense that an appeal lies from that court either to the circuit or superior court, still it was inferior, as it existed in March, 1901, so far as its original jurisdiction was concerned,—that is, it did not have jurisdiction of murder or treason. It was not a court of unlimited, general jurisdiction, as are the circuit court and the superior court, nor is the extent of the territory throughout which it may exercise its jurisdiction as great as that throughout which may be exercised the jurisdiction of the circuit or superior court. In these respects it is an inferior court, and the judge thereof is a "judge of an inferior court of record," within the meaning of section 5 of the Fees and Salaries act.

We therefore hold that it was not within the power of the legislature to increase or diminish the salary of the judge of a city court during the term for which said judge was elected, and that section 262 of chapter 37 of Hurd's Revised Statutes of 1901 applies only to judges of the city courts whose terms of office begin on or after July 1, 1901.

The decree of the circuit court will be reversed and the cause remanded, with directions to that court to overrule the demurrer and to grant leave to appellees to answer or plead, if they shall move for such leave. The temporary injunction will continue in force until the further order of the circuit court.

*Reversed and remanded, with directions.*