(No. 22785.—)

FRANK HEINE *et al.* Appellees, *vs.* HELEN DEGEN *et al.*—
(LOYD W. LOWE *et al.* Appellants.)

*Opinion filed December 19, 1935—Rehearing denied Feb. 5, 1936.*

358

MILLER & SHAPIRO, A. L. & C. M. GRANGER, WALTER C. SCHNEIDER, CLAUDE M. GRANGER, EVA L. MINOR, VERNON G. BUTZ, and MILTON M. ADELMAN, (LELAND K. NEEVES, BENJAMIN V. BECKER, and DON M. PEEBLES, of counsel,) for appellants.

W. H. DYER, (EBEN B. GOWER, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Three creditors of the American Trust and Savings Bank of Kankakee, a State bank, filed their bill in the circuit court of Kankakee county on behalf of themselves and the 2929 other such creditors, to enforce the liability of 173 stockholders of the bank under section 6 of article II of the constitution of 1870 and "An act to revise

the law with relation to banks and banking," approved June 23, 1919. (Smith's Stat. 1933, chap. 16½, sec. 6; Cahill's Stat. 1933, chap. 16a, sec. 6.) By their second amended supplemental bill, filed April 20, 1931, the appellees asked that the court ascertain who were the bank's creditors, the amount of their claims, and who were liable as stockholders and in what amounts; that such persons be required to pay such liability to Fred G. Snow, who had been appointed receiver for the bank; that he be authorized to collect and receive the respective amounts found due the creditors, and that he also be authorized to apply to the court for orders directing the refunding of a surplus, if it developed later that individual stockholders had been over-assessed. On July 21, 1931, the appellant Lowe and other stockholders filed a motion asking that all creditors of the bank be ruled to come in as parties to the proceeding and to prove their claims against the bank and its stockholders within a reasonable time to be fixed by the court before a reference of the cause was made to the master in chancery. This motion was denied. The appellants filed their answers. The reference to the master was made and the appellants filed objections to his report. The objections were overruled. Exceptions were filed, and the chancellor overruled them except as to the ownership of 200 shares of stock, mentioned later. A decree was rendered in conformity with the prayer of the second amended supplemental bill.

The facts found by the decree were: The American State and Savings Bank was organized April 3, 1911. The name was changed January 11, 1921, to the Legris Trust and Savings Bank, and on February 20, 1929, to the American Trust and Savings Bank of Kankakee, Illinois. The capital stock was increased on the last named date from $100,000 to $150,000. The stockholders of record received one share of stock in exchange for two shares previously held by them and the remaining $100,000 of stock was

sold. On December 27, 1929, the bank suspended business, and on January 23, 1930, because the bank's capital was hopelessly impaired, the Auditor of Public Accounts appointed Fred G. Snow receiver. At the time the bank suspended business its cash resources were $8089.55, and its unpaid deposits, debts and obligations were $455,871. The decree finds that the receiver had paid to depositors (excepting certain stockholders) a dividend of twenty-five per cent on the amount of the claims filed and allowed in their favor. The ownership of stock was divided into eighty-two periods. The first period was from the date of suspension of business to the date of the last previous stock transfer, and the remaining periods were fixed by dates of stock transfers. The appellees are each found to have been creditors of the bank, and each appellant is found to be a stockholder who owned, during one or more of said eighty-two periods, stock in the bank in the amount and for the period or periods set forth in the decree. The court then found that the suit was brought by the appellees for themselves and as representatives of all other creditors; that the liabilities of the bank accrued from time to time while the defendant stockholders held shares of stock, and that, aside from the dividend mentioned, no part of the debts due the creditors has been paid; that the complainants, and other creditors on whose behalf they sue, filed their properly verified claims with the receiver, and that the claims were allowed and remain unpaid, except as to the twenty-five per cent dividend. The court sustained an exception to the finding of the master that the appellants Loyd W. Lowe, W. R. Hunter, W. W. Huckins, Charles Pratt and Sam Battaglia were liable upon stock certificates Nos. 1, 4 and 5, representing 200 shares of stock, which stood on the books of the bank in the name of F. E. Legris, Sr., and held that Legris alone was liable on this stock. As already indicated, the remaining exceptions were overruled. A cross-appeal has been perfected from the ruling

on this exception. The decree ordered payment to the receiver within thirty days. The stockholders were assessed amounts equal to the full par value of the shares they owned or had owned. The court retained jurisdiction of the cause for the purpose of making collection, distribution, etc., and ordered that each of the bank's creditors file with the receiver a verified statement of his claim by December 1, 1934.

The appellees question our jurisdiction to entertain this direct appeal. They contend that the appellants failed to raise and preserve constitutional questions in the trial court and that they are, therefore, precluded from doing so here. Our jurisdiction must be determined before we consider the other questions presented.

The general rule is that a case cannot be brought directly to this court for review on the ground that it involves a constitutional question unless the record shows that such question was in some way presented to the trial court. *Moses* v. *Royal Indemnity Co.* 276 Ill. 177, 178.

The appellants filed their motion in the trial court on July 21, 1931, above referred to. This motion was overruled and the case was referred to the master in chancery. The appellants contend that when the appellees closed their proofs there was no competent evidence to show who were the creditors of the bank and that there was no attempt made to prove when their respective claims accrued. They filed objections to the master's report, which were in part as follows: "In recommending a blank decree for $204,-758.78, without saying in whose favor said decree shall run and with the evident purpose of having such amount put in hotchpot and prorated among all the depositors without regard to when their claims accrued, thus causing stockholders to pay to claimants whose claims did not accrue during the period of stock ownership of the particular defendant. In recommending a decree which has the effect of imposing the maximum liability on all stockhold-

ers for all periods regardless of the circumstance that in some periods the gross liability does not equal one per cent of the amount of the outstanding capital stock. In recommending a decree which is confiscatory of private property in violation of the constitution of the United States and also in violation of the constitution of the State of Illinois. In recommending a decree in violation of law." The abstract shows that these objections were joined in by all the appellants, contrary to the contention of the appellees. The objections stood as exceptions to the master's report and were overruled by the chancellor.

The appellants contend that under a proper construction of section 6 of article 11 of the constitution the creditors' right is not a collective one against the stockholders, but that it is an individual right of each creditor against the group of stockholders liable to him. The appellants contend that the suits are combined only for convenience in procedure, and that due process is denied by a decree which does not find who are the individual creditors, the amounts respectively due them, and which stockholders owe such amounts. They contend their property is taken without due process of law through a decree which is void because no inquiry was made into facts necessary and essential to its validity.

The appellees say that the constitutional questions were not raised in the trial court because it is neither necessary nor proper to file objections or exceptions to the master's legal conclusions, and that, therefore, these objections and exceptions were void. They cite *Pace* v. *Pace,* 271 Ill. 114, *Gillett* v. *Chicago Title and Trust Co.* 230 id. 373, and *VonPlaten* v. *Winterbotham,* 203 id. 198. Although we held in those decisions that it is not necessary to file exceptions to the conclusions of law arrived at by a master in order to call the alleged errors to the attention of the chancellor, this is not a holding that such exceptions are void. Regardless of the fact that they were not necessary,

they show that the appellants did present the constitutional questions to the chancellor. The exceptions recite these questions, and the chancellor was not asked to strike them but to do what the record shows he did, viz., to overrule them.

The appellees rely upon *Iles* v. *Heidenreich,* 271 Ill. 480, *Odin Coal Co.* v. *Industrial Com.* 297 id. 392, and *McNeil & Higgins Co.* v. *Neenah Cheese and Cold Storage Co.* 290 id. 449, to sustain their contention that the appellants were under the duty to point out what articles of the constitution were violated, and that the appellants must also state in detail to the trial court the constitutional questions raised by them. In *Iles* v. *Heidenreich, supra,* at page 486, we said: "A mere allegation in a pleading that a statute is unconstitutional does not confer jurisdiction on the Supreme Court unless the court can see that the question raised is one which may fairly be regarded as debatable.—*Beach* v. *Peabody,* 188 Ill. 75."

The same contention as that of the appellees was made in *Moses* v. *Royal Indemnity Co.* 276 Ill. 177, 178, where we said in concluding that we had jurisdiction of the case: "Nothing is found in the motions or affidavit of merits that questions, in terms, the constitutionality of said section 23 of the Municipal Court act. The affidavit of merits, however, filed by appellant states, among other things, that the trial court was without power or jurisdiction to stay said execution and that therefore said bond was without consideration and null and void. Under that objection the constitutionality of said section might have been raised in the trial court, (*Wolf* v. *Hope,* 210 Ill. 50; *Christy* v. *Elliott,* 216 id. 31; *Shepherd* v. *City of Sullivan,* 166 id. 78;) and counsel for appellant insist that it was so raised."

In *Christy* v. *Elliott, supra,* it was also insisted that no constitutional question had been raised in the trial court, but we held that the fourteenth reason set up in the motion for a new trial, which was, "The court erred in the

giving of instruction for plaintiff No. 1, as the act of 1903 to regulate the speed of automobiles is void," and the fifteenth reason in the motion, which was, "The court erred in the giving of plaintiff's instruction No. 4, as section 2 of the act of 1903 to regulate the speed of automobiles is void, not being expressed in the title of said act," raised the constitutional questions. At page 39 of that decision we said: "We find in the record, among the reasons in favor of the motion for new trial, two reasons which expressly specify the unconstitutionality of the statute as grounds for challenging the correctness of the court's action in giving two of the instructions, which were specifically excepted to by the appellant. We are inclined, therefore, to the opinion that the validity of the statute is involved upon the record."

In view of these decisions the appellees' contention is not well taken. The exceptions quoted presented to the trial court the question of the proper construction of section 6 of article 11 and the question of due process of law. The exceptions were overruled and the questions are preserved for review.

We will now consider the appellants' contention that the creditors' rights are individual and not collective, and that their respective suits are combined for their convenience in matters of procedure, only, against various groups of stockholders, and that the constitution is violated by a decree which does not find who are the individual creditors and which stockholders are liable to them.

The right to maintain a representative suit in such a case as this cannot now be questioned. In *Golden v. Cervenka,* 278 Ill. 409, 435, we held that the right in these cases to maintain such a suit had been established theretofore in such cases as *Eames v. Doris,* 102 Ill. 350, *Tunesma v. Schuttler,* 114 id. 156, *Queenan v. Palmer,* 117 id. 619, and *Palmer v. Woods,* 149 id. 146. The *Cervenka case* was a representative suit, and Cervenka and other creditors

were enjoined from prosecuting actions at law which they had previously filed against stockholders of the bank.

In order to determine how distribution of the assessment against stockholders under section 6 of article II should be made in a suit such as this we must ascertain the meaning of the word "creditors," contained in the section. The language of that section is: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." The sixth section of the Banking act of 1919 (Laws of 1919, p. 226,) contains substantially the same language as that quoted from the constitution and concludes with a provision that no transfer of stock shall operate as a release of liability. The word "creditors" has not been construed in any of the representative suits against stockholders called to our attention. Whether it means creditors generally or individual creditors must be ascertained. Its meaning was not at issue in *Golden* v. *Cervenka, supra,* or in *Sanders* v. *Merchants State Bank,* 349 Ill. 547.

The appellants rely upon the following language in the *Cervenka case* to support their contention that the decree should have found to what creditors each stockholder was liable and the amount of his liability: "The stockholders' liability created by the constitution is to the creditors of the corporation, and is a several and individual liability on the part of each stockholder to each creditor. It is not a liability to the corporation or to the creditors of the corporation as a class, but to each individual creditor on the part of each individual stockholder. Therefore it is the creditors, alone, individually or collectively, who can enforce the liability by such remedies as the law affords." They also rely upon the following language from *Sanders*

v. *Merchants State Bank, supra,* at page 564: "The stockholder is liable to the same extent as the bank. * * * He can be held on no other terms. * * * Under the constitution his liability is identical with the liability of the bank." Also on the following statement at page 565: "Any depositor of the bank during his ownership of the stock having made a demand of payment might have sued him for the amount of his deposit under the constitutional imposition of liability on him, and any other creditor whose claim accrued during his ownership of the stock, and was due, might have sued him without any demand."

An examination of the decision in *Golden* v. *Cervenka, supra,* shows that no question as to the construction of the word "creditors" was involved. The amendment of 1907 to section 11 of the Banking act, which purported to authorize the bank receiver to enforce the liability of stockholders, was there considered. In filing their bill the creditors followed the constitution. The receiver for the bank filed a cross-bill under the 1907 amendment to the statute. The decree directed payment to be made to the receiver. The stockholders contended that the 1907 amendment, authorizing enforcement by the bank receiver, was unconstitutional, in that it took from the creditors a right given them by the constitution, and that payment to the bank receiver under a decree rendered on a bill filed by him would not be binding on the creditors. We held that the constitution gave the right to the creditors and that the legislature had no power to restrict that right, and that creditors had a right to pursue and control their own remedies in respect to their own property. We held that the legislature had no power to authorize the bank receiver to sue for and collect such liabilities or to make his receipt a discharge of the stockholder's debt. We held that it was proper to bring a representative suit against all the stockholders to enforce their individual liability and to enjoin suits of an individual creditor against stockholders, and

that the creditors, acting together, could enforce the liability by such remedies as the law affords. We said that the decree should have ordered payment to a receiver to be appointed under the creditors' bill. We determined the extent of the stockholder's liability. Other matters were also involved in the case but none of them involve the question presented here. The same is true of the decision in *Sanders* v. *Merchants State Bank, supra.* In the latter case the points decided are expressly limited to, first, whether all the successive owners of a single share of stock should be held liable to the amount of the par value of the stock for debts accruing during the respective periods of ownership; second, what period of limitation, if any, under the statute, will bar an action to recover the superadded liability from a stockholder; and third, is there a liability which must be borne by an heir, legatee or devisee of a stockholder who has died and whose estate has been closed.

It will be seen that neither of these two cases involved the question as to how the money collected from stockholders should be distributed to the creditors. For that reason the language which the appellants rely upon does not control the decision of the question before us. When we attempt to apply that language to this question it is susceptible of two or more constructions and is ambiguous. This further shows we were not there dealing with this question.

No cases have been called to our attention construing the word "creditors" contained in this section. With regard to the distribution of money collected from stockholders two constructions may be made. Under one construction a stockholder's liability is limited by, first, the par value of his shares, and second, by the total amount of "liabilities accruing while he or she remained such stockholder," and the money would be distributed ratably to all of the creditors of the bank. Such a construction makes

the latter part of the section, "to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder," a measure of the liability rather than a designation of what creditors are entitled to share in the money due. The definition of those entitled to share in the money recovered from a stockholder is thus restricted to the first clause, "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors." This construction places all creditors on an equal footing.

The second construction would make a stockholder pay liabilities of the bank incurred while he was such stockholder for the benefit of those creditors, alone, whose claims accrued during his ownership. Under this construction it would be necessary to add to the section language limiting "its creditors" to such creditors, only, as had claims against the bank which arose out of "liabilities accruing while he or she remains such stockholder." This would result in a change in the literal meaning of "its creditors," and make the latter part of the section not only a measure of the existence and extent of a stockholder's liability but also a definition of what creditors are entitled to share in the money recovered.

Although the precise question has not been before this court there are decisions which will be of aid. *Low* v. *Buchanan,* 94 Ill. 76, involved the question whether a director's statutory liability could be enforced by an individual creditor of the corporation for his sole benefit, or whether it should be enforced for the benefit of all of the creditors of the corporation. Section 16 of chapter 32 of the Revised Statutes of 1874 was there considered. It provided: "If the indebtedness of any stock corporation exceed the amount of its capital stock, the directors and officers of such corporation assenting thereto shall be personally and individually liable for such excess to the creditors of such corporation." At page 80 of that decision

we said: "After a careful consideration of the matter, we have reached the conclusion that directors and officers of stock corporations who incur liabilities under the section in question, become bound and answerable, not to some particular creditor, but, in the language of the act, to the 'creditors'—that is, all the creditors. This construction puts all the creditors upon a perfect equality, and is in conformity with the express words of the act. It was doubtless the object and purpose of the legislature that all claims arising under the provisions of the section in question should be regarded in the nature of a trust fund, to be collected and divided *pro rata* among all the creditors. And if we are correct in this conclusion, it is quite manifest that this distribution of the fund could only be made in a court of equity." In *Woolverton* v. *Taylor*, 132 Ill. 197, the same construction was given to this section.

In *Harper* v. *Union Manf. Co.* 100 Ill. 225, we construed section 9 of the act of 1857 relating to corporations and followed the construction given the word "creditors" in *Low* v. *Buchanan*. We held that a single creditor could not maintain a bill against the stockholders to enforce the stockholders' liability created by the section but that such suit could only be brought for all of the creditors.

These two decisions were followed in *Rounds* v. *McCormick*, 114 Ill. 252. It was there held that the liability of stockholders under section 9 of the 1857 act was to the creditors as a class and not to an individual creditor. *Low* v. *Buchanan* was treated as a leading case and ·was followed by the Iowa Supreme Court in *Platner* v. *Hughes*, 201 Iowa, 48, 206 N. W. 268. This latter case was·followed in *Andrews* v. *Farmers Trust Bank*, 204 Iowa, 243, 213 N. W. 925, where it was held that the Iowa statute on the liability of bank stockholders, with language substantially the same. as that in our constitution, created a liability which is a trust fund for the benefit of all the bank's creditors.

The constitutions of Nebraska and West Virginia contain provisions similar to those in our own with reference to the liability of bank stockholders. Although their Supreme Courts have reached a different result from our own as to some of the questions that have arisen, they have construed "creditors" to mean creditors generally, and the obligation of stockholders for liabilities accruing while they were owners of shares was held not to be to those creditors, alone, in whose favor such liabilities were incurred. *In re Wilson's Estate*, 254 N. W. (Neb.) 717; *Rogers* v. *Selleck*, 117 Neb. 569, 221 N. W. 702; *Pickering* v. *Hastings*, 56 id. 201, 76 N. W. 587; *McClaren* v. *Anderson*, 110 W. Va. 380, 158 S. E. 379; *Benedum* v. *First Citizens Bank*, 72 id. 124, 78 S. E. 656.

The word "creditors" was held to embrace all creditors rather than those whose claims caused indebtedness beyond the statutory limit, in *Horner* v. *Henning*, 93 U. S. 228, and *National Bank of Auburn* v. *Dillingham*, 147 N. Y. 603, 42 N. E. 338.

It was doubtless the object and purpose of the framers of the constitution of 1870 that all claims arising under section 6 of article 11 should be regarded as being for the benefit of all the creditors of the bank, ratably, in case the bank became insolvent. This carries into effect the principle that "equality is equity," and will avoid a large measure of perplexing difficulties that otherwise arise in making distribution. It also avoids the apparent incongruity of a representative suit being brought by creditors who would be members of one class not alone for all the other members of their class but for the various classes of creditors whose claims are based upon liabilities of the bank incurred during the various periods of stock ownership. The respective stockholders are in no way affected by this holding. The maximum amount for which they are liable is fixed by the face value of their shares of stock, and this is further limited to the liabilities which

accrued during the time the individual stockholder owned his shares.

It necessarily follows that we must overrule the appellants' contention that in this representative suit the creditors' right is not a collective right of all the creditors against all the stockholders who are found to be liable but that the right is individual as to each separate creditor, and that these individual suits are combined for the convenience of the creditors in matters of procedure, only, against various groups of stockholders, and that the constitutional provision is violated by a decree which does not find who are the individual creditors and which stockholders are liable to these individual creditors.

The next point raised by the appellants is that the procedure below deprived them of the opportunity to be heard on the creditors' claims, and that the result was a final decree without any attempt made in the trial of the cause to determine essential elements in the case. They contend this violates section 2 of article 2 of our constitution and the fourteenth amendment to the Federal constitution— that is, that they were denied due process of law. They insist that the correct procedure required that their motion of July 21, 1931, be allowed and that all creditors should have been compelled to prove their claims within a reasonable time to be fixed by the court. They say they were denied the opportunity to defend and to set off claims in favor of the bank. They also say that the testimony of the auditor for the appellees shows that amounts owing by creditors on notes due the bank from them were not set off by him in his calculation of the amounts due the creditors, and that no attempt was made to separate the indebtedness by periods corresponding to the eighty-two periods of stock ownership. Conceding for the moment, only, that these contentions are based on facts, the effect would be that the decree is erroneous. It would not be a decree arrived at without due process of law. (*Gens-*

*linger* v. *New Illinois Athletic Club,* 332 Ill. 316, 320; *Albrecht* v. *Omphghent Township,* 324 id. 200; *Cooper* v. *Palais Royal Theatre Co.* 320 id. 44.) The decisions in *Hultberg* v. *Anderson,* 252 Ill. 607, *Fayerweather* v. *Ritch,* 195 U. S. 277, 49 L. ed. 193, and *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 166 id. 226, 41 L. ed. 979, which the appellants rely on in support of their claim that due process was denied them, are not in point under the facts presented by this record.

It was not error to deny appellants' motion and to proceed without first requiring the claims to be proved. It is not a prerequisite that all claims be proved by the creditors in order to determine the amounts owing by the individual stockholders who are primarily liable. This proof can be made otherwise. The books of the bank and its papers, etc., should show what it owes each creditor and when the obligation accrued to him. It is necessary, in order to determine the liability of the individual stockholder under the constitution and statute, to find when the respective liabilities accrued and what, if anything, remains unpaid.

Contrary to the appellants' contention, the rule that presumably the first money paid in was the first paid out, laid down in *Clayton's case,* 1 Meriv. 572, and approved in *People* v. *Tallmadge,* 328 Ill. 210, *Sanders* v. *Merchants' State Bank,* 349 id. 547, 558, and *Harrison* v. *Ault,* 359 id. 75, does not work injustice to the appellants but is sound, and necessary to determine the respective amounts for which the various stockholders are liable. In discussing the question of the propriety of a representative suit in such case, in *Palmer* v. *Woods,* 149 Ill. 146, 153, we quoted from *Hallett* v. *Hallett,* 2 Paige, 12, with approval and said: "In these cases, to remedy the practical inconvenience of making a great number of parties to the suit, and compelling those to litigate who might otherwise make no claim upon the defendants or the fund in their hands, a method has been devised of permitting the complainants

to prosecute in behalf of themselves and all others standing in the same situation who may afterwards elect to come in and claim as parties to the suit and bear their portion of the expenses of the litigation. If such parties neglect to come in under the decree after a reasonable notice for that purpose, the fund will be distributed without reference to any unliquidated or unsettled claims which they might have had upon the same. But if the rights of such absent parties are known and ascertained by the proceedings in the suit provision will be made for them in the decree." This language clearly indicates that either method of arriving at the amount of the individual claims is proper and that by either the rights of the appellants would be protected. This contention is not well taken.

The appellants contend that an audit of the books of the bank was improperly received in evidence for the following reasons: (1) It was not the best evidence; (2) it was based on hearsay and other evidence not admissible; (3) it was based on erroneous legal theories of the accrual of liability; (4) it was based on pencil memoranda of the bank receiver; (5) it includes items of liability wholly unproved either as to their existence or the time they accrued; (6) it is fundamentally erroneous in allocating credits for withdrawals; (7) it was erroneous in the method used to determine the ownership and issuance of certificates of stock; and (8) it was wrong in that it included improper elements of liability. However, the appellants introduced in evidence an audit which one of them, F. E. Legris, Jr., prepared from the books, records and documents of the bank which were in the hands of its receiver. It covered the thirty-two periods of stock ownership which existed, according to Heiberg, the auditor, who testified for appellees, from the re-organization of the bank on February 15, 1929, to December 27, 1929, both inclusive. Legris testified that if he had used the same method as was used by the auditor for the appellees and had made

a complete audit of the books he would have arrived at the same figures as Heiberg. The difference in method referred to by Legris is that he treated the re-organized bank as a separate and distinct institution. He did not include the money on deposit, carried over into the assets of the re-organized bank. He did not concern himself with anything except newly deposited funds in the re-organized bank, and made his audit upon the theory held by the appellants that liability of stockholders for a particular time deposit which had been renewed, thereafter must be borne by those who were holders of shares on the date the original deposit was made. However, he charged the present stockholders with interest on these renewed deposits. This would make certain classes of stockholders liable for interest but not liable for the principal indebtedness. He used the same books that Heiberg audited, to determine when and in what amount the renewed deposits were made. In *Harrison* v. *Ault*, 359 Ill. 75, we held that the surrender of a certificate of deposit and the issuance of a new one is a new contract of deposit.

The theory as to withdrawals held by the appellants, under which they would separate the bank into two distinct banks, that before and that after the re-organization of February 15, 1929, is fallacious. It must be treated as one bank, and the rule that the first money deposited is the first withdrawn must be applied, as it was by the chancellor, from the founding of the bank.

The appellants attempted to limit the effect of their exhibit or audit and Legris' testimony so that it would not operate to nullify their objections to the competency of the audit prepared by the appellees' witness Heiberg and his testimony, but their exhibit and the testimony of Legris go to the merits of the case and do not in any way question the correctness of the books or data from which Heiberg made up his audit. The appellants cannot now com-

plain that no foundation was laid by the appellees for the introduction of their exhibit, where the appellants have used the same books, etc., prepared an audit and introduced it in evidence in the same manner. "If the evidence for the appellee was incompetent so was that for the appellants, and they ought not be heard to complain that evidence of the same character which they offered was not proper." *Kuhn* v. *Eppstein,* 239 Ill. 555.

This removes six of the appellants' objections to the Heiberg testimony and audit. There remain two which question the propriety of including approximately $1700 in bills payable by the bank for the reason that the appellants claim the evidence does not show when such bills were incurred, and an alleged error of including overdrafts as liabilities of the bank, amounting to $1556.05. The overdrafts are charged by the Heiberg audit, $1554.06 against the first class of stockholders, 93 cents against the second and $2.06 against the third class. The bills payable were charged as follows: $1456.69 against the first class, $139.33 against the second, $9 against the third, and $94.50 against the fourth class. The answer to these two objections is, that $100,791.73 is the amount of liabilities chargeable against the first class of stockholders, $15,903.54 the amount chargeable against the second group, $49,469.83 against the third group, and $44,223.09 the amount chargeable against the fourth group. The capital of the bank was $150,000 after its re-organization, and the holders of stock during the period of ownership ending with the closing of the bank, numbered first, as well as the owners during the second, third and fourth periods, are all chargeable with the maximum liability. In other words, if the bills payable and the overdrafts were excluded from the liabilities and the overdrafts had been treated as assets, there would be no change in the amounts owing by the appellants who were members of the first four classes of stockholders.

The objection is also made that there was no proof of delivery of the various stock certificates; that this proof was essential, and that it was error to permit Heiberg to include, in his audit, information as to who were the holders of shares in the various periods of stock ownership, taken from the bank's stock register. The effect of our holding in *Golden* v. *Cervenka,* at page 439, is, that depositors and creditors of a bank have a right to rely upon the books of the bank to determine who are the respective owners of its stock. This contention is not well taken.

By his separate appeal Elzie Huot contends he was not the holder of the twenty shares he bought and paid for on February 25, 1929. He insists that his agreement made with Alphonse Legris, a stockholder, officer and director of the Legris Trust and Savings Bank, was that Huot was to become a stockholder and director on condition that Fred Snow was elected president in the re-organization of the bank. The day he paid for his stock was that set for the election of the new directors. Huot went to the bank and paid for his stock, receipted for it, and went to the room where the meeting was to have been held and was told it was postponed but that everything would work out as he had been told. He got his money back on March 7, after he threatened to sue. He relies upon what we said in *Golden* v. *Cervenka* at pages 439 to 441, but that language and holding indicate the correctness of the chancellor's finding of liability against Huot. In a suit such as this it is no defense that a stockholder was induced by fraud to buy stock. The chancellor committed no error in overruling this appellant's exception to the master's finding against him.

The contention of the appellant Paul Lang must also be overruled. He relies upon the following language from the *Cervenka case,* on page 439, that a stockholder of a bank "can be relieved from liability only by a transfer of his stock on the books. At least he must comply with the

requirements for such transfer and make a demand upon the officials of the bank that it be made." Lang took ten shares of stock on May 1, 1928, in an automobile sale. When the certificate was surrendered and a new one issued to him he says he told Alphonse Legris that he was going to sell the stock to Mel Cooley. About ten minutes later he says he returned and told Legris he had sold the shares to Cooley and asked him to transfer them to Cooley. They were not transferred, apparently, until February 23, 1929, and Lang was held for liabilities which accrued against the bank in that period. He claims that he was the real owner for approximately ten minutes on May 1, 1928, and that no liabilities are shown to have accrued against the bank during this ten minutes. But an oral request to transfer stock in the bank, unaccompanied by the surrender of the certificate of stock, would not have warranted the bank in making such transfer on its books. Lang did not do all he had to do to cease being a stockholder and was properly held liable.

The appellants Margaret L. Hinderer, administratrix, and Walter F. Hinderer, administrator, of the estate of Gottlob H. Hinderer, deceased; Mary E. Taylor, executrix of the last will and testament of Herbert E. Taylor, deceased; and the City Trust and Savings Bank of Kankakee, Illinois, as executor of the last will and testament of Hyman Epstein, deceased, were, respectively, substituted for their decedents, who died after the bill was filed in this case. They say the cause of action abates, and that if it be held to survive against the estate of the decedent, separate suits would be required to enforce the stockholder's liability. The answer to the question presented is found in the nature of the cause of action—that is, whether it is contractual or penal. In the case of a penalty the liability springs from some act of omission or commission in violation of law, and in the other case the liability is incurred in strict compliance with the law. In

the first case it is for a wrong done—a tort; and in the second it is upon a contract. (*Diversey* v. *Smith*, 103 Ill. 378, 395.) We reviewed the authorities in that decision, and from what it contains there can be no question that the cause of action here is contractual. The liability is a primary one imposed by the constitution and the statute, and is read into the contract of purchase, by operation of law, whenever a share of stock is bought. It does not spring from any wrong or failure to observe the law. There is no reason why there should be a constitutional or statutory provision expressly making this contractual action continue in force any more than would be necessary for any other action *ex contractu*, since such actions survived at common law. The creation of such an action either by statute or by constitution places it in its class and makes it one which by its nature survives against the personal representatives of these deceased stockholders, Hinderer, Taylor and Epstein.

These appellants rely upon *Gemmill* v. *Smith*, 274 Ill. 87, to sustain their claim that separate suits would have to be brought against the personal representatives of the three stockholders. That was a tort action and the decision is not in point. The appellants are correct in their contention that the decree was erroneous in that it ordered execution to issue against these personal representatives within thirty days after the decree was filed. The decree is modified, and the order is that the amounts found due be paid in due course of administration of the respective estates.

Earlier in this opinion we have mentioned the fact that a cross-appeal was taken from that part of the chancellor's decree which found Hunter, Huckins, Battaglia, Pratt and Lowe not liable on 200 shares of bank stock and placed the liability therefor on Fred E. Legris, Sr., the owner of record. The cross-appellees contend that Pratt was not an appellant, and that all the parties affected by the portion of

the decree sought to be reversed by the cross-appeal are not here. They say that the cross-appellants should have come here by separate appeal. These four cross-appellees stipulated that Frank Heine, Lizzie Heine, and W. H. or W. E. Stewig, who are the cross-appellants, duly filed and served their notice of appearance and of cross-appeal and made proof of service as required by law. Rule 35 of this court provides:

"Rule 35.—(1) Each appellee who desires to prosecute a cross-appeal from all or any part of the judgment, decision, order or decree, and each co-party who did not join in the notice of appeal but who desires to join as appellant or to prosecute a separate appeal, shall, within ten days after service of notice of appeal, serve a notice upon each party or attorney or firm of attorneys who signed the notice of appeal, and upon each appellee, or in case of a cross-appeal upon each co-appellee, and file a copy thereof in the trial court."

The fourth part of this rule requires service on each appellee and upon any other person or officer entitled by law to a notice of appeal where the notice of appearance shall indicate an intention to prosecute a cross-appeal or a separate appeal by a co-party. There seems to be no way provided for an appellee to appeal from a decree other than by cross-appeal, and none is needed. A co-party may bring a separate appeal if he has interests which conflict with those of the appellant, but no mention is made in this connection of such a separate appeal by the appellees. Under the rule, and by reason of the stipulation, the cross-appeal was properly brought, and the contention that Pratt is not before this court as a party to the cross-appeal is without merit.

It is the contention of the cross-appellees that there is nothing in this record to show who of the five owned the 200 shares of stock. The question involved in the suit at law between Lowe and the other four cross-appellees, which

is reported in 356 Ill. 360, was as to how Lowe signed the promissory note sued on. The ownership of the 200 shares of stock was not an issue in the case. We have read the abstract of the record in that case, which was made a part of the proofs in the case before us by stipulation, and it does not establish who became the owner or owners of these 200 shares. It was the duty of the cross-appellants to establish who were the owners. We need not decide whether, in addition to Legris, the record owner, the real owners of these 200 shares were liable.

The decree of the circuit court of Kankakee county is affirmed, except that the respective amounts found due from the estates of Walter F. Hinderer, Herbert E. Taylor and Hyman Epstein, all deceased, are ordered paid by their respective personal representatives in the due course of administration. *Decree modified and affirmed.*

Mr. JUSTICE SHAW, dissenting:

I cannot concur in the foregoing opinion because of its citation of and dependence on the rules announced in the cases of *Sanders* v. *Merchants State Bank,* 349 Ill. 547, and *Golden* v. *Cervenka,* 278 id. 409. In my opinion those cases should be overruled and should not be given the added weight accorded them by the result reached in this case. It is said that they are not controlling in this litigation, and the opinion goes to some length in pointing this out. The fact remains, however, that the trial court attempted to state an account in accordance with those rules, and in affirming that decree the effect is to re-affirm those principles which have been destructive of State banking in Illinois.

The constitutional provision is: "Every stockholder in a banking corporation * * * shall be individually * * * liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." It is necessary to

determine the exact meaning of this language and to define its limits. To do so one must consider the words used, the object to be attained and also the consequences to be avoided. I assume that the framers of the constitution used words they intended to use, avoided words they did not intend to use, intended each word to have a meaning, and that the meaning intended for each word was that ordinarily to be applied to legal instruments. Webster's and the Century Dictionary agree that the verb "accrue" means, in law, "to become a present and enforcible right or demand." The dictionaries also inform us that the verb "remain" means to continue. Assuming, then, that the constitutional provision was intended to be understood and interpreted by an application of the ordinary usage of the words employed I arrive at the following result: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities becoming present and enforcible rights or demands while he or she continues to be such stockholder."

The object sought to be attained by the constitutional provision cited was to impose the well known and fully understood double liability of stockholders. Provisions of this kind, in widely variant language, had been common in private bank charters prior to the constitution of 1870 and had also been applied to other private corporations. References to various private laws will disclose examples too numerous to be quoted in this dissent. The simple language used in the constitution indicates an intent to impose this double liability upon all who might own the stock of a bank at the time of the maturity of any of its engagements. Nothing more can be read into it.

It is equally apparent that those who wrote the constitution wished to avoid any unworkable plan which would hold out to creditors results chimerical rather than substan-

tial. The determination of the persons who are stockholders in a bank at the moment of the maturity of any obligation is quickly and easily ascertainable and is readily within the reach of a court of equity, which can look behind or set aside any fraudulent or fictitious transfer of stock. The creditors can thus have a definite remedy easily ascertained, swiftly imposed and productive of immediate results in their behalf without protracted or expensive litigation. On the other hand, it has been demonstrated by actual experience that it is not practicable to construe the word "accruing" as synonymous with "incurred." Efforts to state accounts wherein deposits are charged against lists of stockholders as of various dates of stock ownership have resulted only in protracted and expensive litigation not fruitful of any practical results to stockholders but highly productive of sharply-contested and keenly-argued issues as to liabilities on the part of stockholders and as to the application of the proceeds of anticipated judgments on the part of creditors. It is apparent, and experience has proved, that as to banks with large deposits and an outstanding issue of stock which has been subject to considerable trading, an exact imposition of a stockholder's liability on such a theory is impossible. Neither is it possible to justly and equitably make distribution of a fund so collected if this doctrine is adhered to. I may safely assume that the framers of the constitution intended no such impracticable and unworkable plan, and that they did not intend that years should be spent in determining a liability which, if to be of any benefit to depositors, must be swift and certain and susceptible of imposition without unreasonable expense. I also assume that the framers of the constitution did not intend that a person once a stockholder in a bank should forever remain subject to the hazards of liability not matured or accrued during the period of his stock ownership. Had it been so intended, different or additional words would have been used to make such

384

an unreasonable intention apparent and clear and the word "remains" would have been omitted or modified. This conclusion as to this matter is sustained by the case of *Duke v. Johnson*, 211 Pac. (Wash.) 710, and is in harmony with the case of *Andrews* v. *Commercial State Bank*, 221 N. W. (Iowa,) 809.

ORR and HERRICK, JJ., also dissenting.