(No. 26719.—Reversed and remanded.)

ROSE HOLDERMAN *et al.*, Appellees, *vs.* THE MOORE STATE BANK *et al.*—(OTTO J. PECK *et al.*, Appellants.)

*Opinion filed September 21, 1943.*

FULTON, J., took no part.

HAWBAKER & SIEVERS, (ELIM J. HAWBAKER, of counsel,) for appellants.

N. E. HUTSON, HOWARD REED, and MEYER & FRANKLIN, for appellees.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) *amicus curiae.*

MR. JUSTICE GUNN delivered the opinion of the court:

The Moore State Bank of Monticello closed its doors February 20, 1933, and a receiver was appointed by the Auditor of Public Accounts to liquidate its assets. Shortly thereafter two representative suits, later consolidated, were filed by creditors of the bank to enforce stockholders' constitutional liability, and May 15, 1937, decrees were obtained against all such stockholders except those who had paid or settled their liability prior to the entry of such judgment, and F. L. Borton was appointed by the circuit court of Piatt county to collect such stockholders' liability for the creditors of the bank entitled thereto. Hereafter for convenience the respective receivers will be referred to as Auditor's receiver and creditors' receiver. The total liabilities of the bank were in excess of $300,000, and the liabilities of stockholders were divided into 63 periods, commencing with November 25, 1903, and ending February 18, 1933.

Appellants in this case were the owners of stock in said bank and liable to the creditors of the bank for periods 1 to 45, inclusive. The aggregate indebtedness of the bank accruing during the time of such periods, as shown by the books of the bank, amounted to $25,428.46. The contemporaneous stockholders liable to the creditors of the bank during this time paid to the creditors' receiver either in satisfaction of judgments, or by way of settlement as follows: Jean R. Marquis, owner of twenty shares, based

upon periods 7 to 31, inclusive, $1541.99, which was settled for the sum of $1,000; Otto J. Peck, owner of two shares, $200, which was settled for the sum of $150; Ben Cole, owner of two shares, $200, which was settled for the sum of $177; Da Fitzwater, owner of five shares, $500, which was settled for the sum of $441; James Rankin, owner of ten shares, $1000, which was settled for the sum of $882; Alva Royse and John Salyers, the latter represented by his executor, before decree paid the full amount of their stock liability, viz., Royse $300, and Salyers $1000.

Belle H. Moore, owner of ten shares, $1000, who does not appeal, settled for $882; Carrie Hawley, owner of three shares of stock, $300, who does not appeal, paid $300. D. M. Moore, who does not appeal, was the owner of 922 shares of stock and was liable to have a decree rendered against him for the full amount of the accrued indebtedness, since the par value of his stock exceeded the indebtedness, but by order of court said claim was settled by the payment of $13,220. It does not appear any further sums were paid by any stockholders for this period.

Prior to the date of the decree fixing stockholders' liability the Auditor's receiver had paid, on account of deposit liability of the bank, thirty per cent, which would reduce the stock liability for periods 1 to 45 by the sum of $7428.43. At the time of the filing of the amended petition the liquidating receiver had paid an additional dividend on the deposit liability of the bank of thirty-three per cent, which would further reduce the stock liability for the periods 1 to 45 by the sum of $8171.27. Thus it appears at the date the decree was entered against appellants the sum paid by the stockholders in these periods, plus the thirty per cent dividend paid by the liquidating receiver, lacked approximately $500 of discharging the entire amount due from stockholders for debts accruing during such periods, but if the appellants were entitled to have credited upon such stock liability the entire sixty-three

per cent collected by the liquidating receiver the stockholders for such period will have overpaid their liability by approximately $7600.

The appellants, with other parties not appealing, filed their petition December 13, 1939, in the creditors' receivership for the collection of stockholders' liability, praying for a refund based upon the proposition that the dividends paid by the liquidating receiver, together with the payments made by petitioners, amounted to more than the total stock liability owing for the periods 1 to 45, inclusive.

The principal point for decision is whether stockholders of the bank are entitled to a refund where they paid to the creditors' receiver upon their constitutional liability a sum of money which, together with the amounts collected from the assets of the bank by the liquidating receiver, exceeded the sum due creditors for the periods during which they were stockholders. The circuit and Appellate courts both decided appellants were not entitled to such a refund, and an appeal has been allowed to this court.

The Appellate Court based its decision upon two propositions, the first that *Heine* v. *Degen,* 362 Ill. 357, held that under the constitutional provision, section 6, article XI, the liability of a stockholder of a bank is for the benefit of the creditors generally, and the liability of a particular stockholder, although measured by liabilities accruing during his ownership of stock, is not to those creditors, alone, in whose favor such liabilities were incurred, evidently basing its opinion on that part of *Heine* v. *Degen,* wherein it is said: "It was doubtless the object and purpose of the framers of the constitution of 1870 that all claims arising under section 6 of article XI should be regarded as being for the benefit of all the creditors of the bank, ratably, in case the bank became insolvent." The second ground upon which the Appellate Court based its decision was that when the liability of a stockholder has been reduced to judgment the liability has been merged therein and be-

comes a new obligation of record which differs in kind, nature and essence from the original obligation. The group obligation ceases and becomes a mere personal obligation.

Referring to the first proposition an examination of *Heine* v. *Degen*, 362 Ill. 357, indicates all of the creditors brought a suit against all of the stockholders of the bank, and the principal matter for determination was the right of such creditors to join in one suit and make all the stockholders parties defendant in the suit; the right to bring such suit against such parties, after a comprehensive view of the authorities, was sustained. The language relied upon by the Appellate Court is susceptible of misconstruction.

Probably the most exhaustive discussion of the question of when a stockholder is liable and for what he is liable is to be found in *Golden* v. *Cervenka*, 278 Ill. 409. In that case it is repeatedly pointed out that the stockholder of a bank is liable only for the debts accruing during the time he is a stockholder, and is not liable for any debts accruing before he is a stockholder, or after he has ceased to be a stockholder. We said: "The constitutional liability of the stockholders to the bank's creditors is 'for all its liabilities accruing while he or she remains such stockholder.' * * * Under the constitution and the statute the stockholder is responsible to the amount of his stock for all the liabilities of the bank which are incurred during his ownership of stock and no more, and such responsibility continues until the liability is paid or otherwise discharged."

This case is followed by *Sanders* v. *Merchants State Bank*, 349 Ill. 547. In it three questions were determined by the court, the first of which was as follows: Can all of the successive owners of stock be held liable to the amount of the par value of those shares for debts accruing during the respective periods of ownership of such

successive owners? In passing upon this particular question the court commented as follows: "The constitutional provision is, that every stockholder shall be responsible to an amount equal to his shares, for all the liabilities accruing while he remains a stockholder. The holder of the first certificate of stock issued is responsible for all the debts of the bank to the extent of the stock represented by that certificate until he transfers it. He remains liable after the transfer to the same extent as before, but not for any debt subsequently accruing. * * * So it is with each successive holder. Each is liable, by the express language of the constitution, to an amount equal to his shares for all the liabilities of the bank accruing during his ownership and no more."

It is thus to be observed that in *Golden* v. *Cervenka,* 278 Ill. 409, the court not only held it was erroneous to hold stockholders for liabilities accruing prior to the time of becoming stockholders, but also said the stockholder is liable for only such debts as accrued during his ownership of stock. In the *Sanders case* it limits the liability more precisely by saying the stockholder remains liable after the transfer of stock to the same extent as before, but not for any debt subsequently accruing, and repeatedly announces the stockholder is responsible to the amount of his stock for all of the liabilities incurred during his ownership and no more.

There is no indication *Heine* v. *Degen,* 362 Ill. 357, was intended to overrule this interpretation of the stockholder liability, because in *Comstock* v. *Morgan Park Trust and Savings Bank,* 363 Ill. 341, we said: "Nearly twenty years ago this court in unmistakable language in *Golden* v. *Cervenka,* 278 Ill. 409, interpreted section 6 of article XI of the State constitution, relating to stockholders' liability. In at least three later cases we have announced our adherence to the views expressed in *Golden* v. *Cervenka.* Hundreds of cases involving that liability have been be-

fore the circuit, superior and Appellate Courts of this State. * * * Millions of dollars have been paid on the strength of them, and it would be destructive of the stability of the decisions of this court to further permit reiterations of the claim that the meaning of section 6 of article XI of the constitution is in doubt or is undetermined."

In *Burket* v. *Reliance Bank and Trust Co.* 366 Ill. 98, we said: "In ascertaining the liability of an individual stockholder, the court in which the representative suit is pending must ascertain two primary facts: First, the aggregate amount of liabilities which accrued while the stockholder held his stock, and, second, the par value of the shares of stock so held by him. Without the existence of unsatisfied claims, which accrued while he remained a stockholder, he is under no liability to the bank's creditors at all. If there be unsatisfied claims against the bank, which accrued while he was a stockholder, then, at most, he can be held for no sum in excess of the par value of his stock. If a group of contemporaneous stockholders pay to the receiver in the creditors' suit a sum equal to all the liabilities incurred during the contemporaneous ownership, their liabilities are satisfied, and there is no warrant of law to compel that group to pay to the receiver, for the benefit of creditors, a sum greater than the aggregate of liabilities incurred by the bank while that group were the stockholders. These principles have been firmly established by the decisions of this court in *Golden* v. *Cervenka,* 278 Ill. 409; *Sanders* v. *Merchants State Bank,* 349 id. 547; *Leonard* v. *Bye,* 361 id. 185; *Heine* v. *Degen,* 362 id. 357; and *Comstock* v. *Morgan Park Trust and Savings Bank,* 363 id. 341."

In the later case of *Hilmer* v. *Chicago Bank of Commerce,* 375 Ill. 266, where the contention was made that payments of stockholders should be applied pro rata to discharge unsatisfied liabilities, in commenting upon *Heine* v. *Degen,* it is said: "This position results from a confu-

sion of two separate and distinct principles of law. It is true that under *Heine* v. *Degen, supra,* the moneys collected from the stockholders must be distributed ratably to all the creditors, and not merely to those whose claims arose during the period of their stock ownership. However, in *Burket* v. *Reliance Bank and Trust Co., supra,* a different question was involved. The rule laid down in that case is that the liability of a stockholder is limited by the amount of the debts of the bank accruing during the period of his stock ownership and is discharged by payment to the receiver in the representative suit of an amount equal to those debts by stockholders holding during that period."

The holding in *Heine* v. *Degen* and *Hillmer* v. *Chicago Bank of Commerce,* so far as it affects the liability of a contemporaneous group of stockholders, is confusing. The correct rule of liability is set out in *Golden* v. *Cervenka, Sanders* v. *Merchants State Bank* and *Burket* v. *Reliance Bank and Trust Co.* With this measure of liability thoroughly established it would be inaccurate to say a stockholder is liable to any other creditor of the bank than one whose debt accrued while he is a stockholder, and to say that such stockholder is liable to all of the creditors of the bank would render him responsible to creditors who existed both before and after the time he was a stockholder, which is directly contrary to the established rule of a stockholder's liability.

To the extent that *Heine* v. *Degen* apparently makes a stockholder for a given period liable for debts which accrued before or after his period of stock ownership it is inaccurate, and consequently is not adhered to. This brings up for consideration the question of the rights of such stockholders when they have paid in more money than is necessary to discharge the liabilities during their stock ownership.

Section 11 of the Banking Act (Ill. Rev. Stat. 1941, chap. 16½, par. 11,) was in effect at the time the Moore State Bank of Monticello was closed. In addition to the provision authorizing the State Auditor to appoint a receiver to liquidate the bank it also provides the court may appoint a receiver for the purpose of collecting, receiving and disbursing amounts due from stockholders on account of their ownership of stock of the bank; and further, that the funds so collected shall be distributed according to law among the creditors of said bank in such manner as the court shall direct. The receivers hold title to different property and are subject to different rules as to distribution. Anything coming into the hands of the creditors' receiver in collecting stock liability shall be distributed according to law. The general creditors of the bank, or such creditors as have claims against stockholders are the only persons interested in the distribution of the funds collected by either receiver. (*Comstock* v. *Morgan Park Trust and Savings Bank,* 363 Ill. 341; *Burket* v. *Reliance Bank and Trust Co.* 366 Ill. 98.) But it is clear that if funds collected from either source are paid over to the liquidating receiver it is then his duty to distribute such funds ratably among the creditors of the bank, and the court, in *Heine* v. *Degen,* was discussing a situation in which the funds were in the hands of a liquidating or Auditor's receiver. The language of that case is not to be construed as holding that a stockholder of a bank for a given period of time is liable for debts which accrued before or after the period of his stock ownership.

We have held that the creditors of a bank are entitled to a decree against all of the stockholders, liable during the period in which obligations accrued, for the full amount represented by their stock; or, if the debts be less than the par value of the stock, for the full accrued amount of the debt. Thus there may be decree judgments against

several stockholders, which, if all were collected, would be in excess of the debts accrued. We have also held that the payment of this liability is not voluntary (*Lewis* v. *West Side Trust and Savings Bank,* 376 Ill. 23;) and that when sufficient funds have been paid to discharge this indebtedness the remaining stockholders who have not paid, and against whom judgments are entered, are entitled to have them satisfied (*Heine* v. *Degen,* 362 Ill. 357;) and that any amount paid by the liquidating receiver to the creditors of the bank may be deducted from the par value of the stock in entering judgment against the stockholders liable. And we have also recognized there is a right of contribution among the stockholders when some have paid more than their proportionate share of the accrued debts. *Hood* v. *Commonwealth Trust and Savings Bank,* 376 Ill. 413.

We have not passed upon the question of a refund where the payments to the creditors by the liquidating receiver makes the amount paid to the creditors' receiver by the stockholders more than necessary to discharge such liability. While we have distinctly held the liability of stockholders may be reduced by payments made to the creditors before decree is rendered against the stockholders, we do not think there is any difference in principle in giving them credit for payments made by the liquidating receiver after judgment, provided there are funds available for such payment in the hands of the creditors' receiver. To so hold would in many cases make the liability of the stockholder greater than prescribed by the constitution. The liability of the stockholders is not that of a group, but is a single and several liability of each stockholder until the debt is paid, and then all outstanding judgments not necessary to be collected for such purpose should be discharged.

If it so happens the creditors' receiver collects more than is necessary, or dividends paid by the liquidating re-

ceiver reduce the amount for which judgment has been rendered, any sum held by the creditors' receiver in excess of the amount necessary to discharge the stockholders' liability is held in trust, and upon order of the court may, upon equitable principles, be returned.

The principle that money paid, with knowledge of all of the facts, under a misapprehension as to legal rights as between parties, may not be recovered back, is not applicable to payments made to an officer of the court, such as a trustee, administrator or receiver, when it is shown that no injury will be done in ordering it repaid. (*Standard Oil Co.* v. *Hawkins,* 74 Fed. 395; *Sando* v. *Smith,* 237 Ill. App. 570; *Gillig* v. *Grant,* 23 N. Y. App. Div. 596; *Ex Parte James, Inc.* v. *Condon,* 9 Chan. App. 609; *Ex parte Simmons,* 16 Q. B. Div. 308; *Dixon* v. *Brown,* 32 Chan. Div. 597.) The reason of the rule is that while in general the court will allow an individual to so retain money, a court of equity will require its officers to disregard technical rules and do what honest people ought to do. (*Ex parte Simmons,* 16 Q. B. Div. 308.) Analogous principles were announced in *Frelinghuysen* v. *Nugent,* 36 Fed. 229 and *Peters* v. *Bain,* 133 U. S. 670, 33 L. ed. 696.

The question arises whether these principles are applicable to the facts in the present case. The rights of the Auditor's receiver and of the receiver for collecting stockholders' liability are separate and distinct. They acquire their powers from different sources and for different purposes. The first acquires title to the assets of the bank for liquidation, and the second merely collects a fund from stockholders for the benefit of creditors of the bank, existing during the period of their several stock ownerships. The money disbursed by the Auditor's receiver is to all of the bank creditors ratably, whereas the money collected by the creditors' receiver is disbursed among the bank creditors according to law, in such manner as the

court shall direct. The stockholders have no interest in how the court may direct the distribution, as that is a matter in which the creditors alone are interested. *Comstock* v. *Morgan Park Trust and Savings Bank,* 363 Ill. 341.

If the court should order the creditors' receiver to turn over to the Auditor's receiver funds to be distributed as dividends, the propriety of such order can only be questioned by creditors. On the other hand the amount that may be legally collected from the stockholders depends upon the deficiency of bank assets to discharge the debt of any bank creditor on which a stockholder has a liability to pay under the constitution. The fact there may be a credit due to a stockholder because of such payment by the liquidating receiver before the decree is a matter of defense, and after decree fixing the amount of liability, it is a matter of showing the court facts which would discharge or reduce the amount of the money decree.

On the face of the record the creditors' receiver is entitled to collect each judgment and disburse the same as directed by the order of court. Since each decree debtor is *prima facie* liable for the full amount thereof, it is not necessary, after payments have been received by the creditors' receiver, to consult or notify paying stockholders when or in what manner distribution of the money is made. When the creditors' receiver pays money by order of court to the creditors, or to some one for such creditors, his liability is discharged, as such an order fully protects him. A stockholder is in as good a position as the creditors' receiver to know whether the Auditor's receiver will reduce the liability by the payment of dividends, as the statute requires such receiver to render an account once a year. The public records also show each year those who are stockholders, as disclosed by the bank books, and the latter also show the amount of liability for any given period of time.

While it is true stockholders against whom decrees are rendered cannot be compelled to pay the creditors' receiver more than the debt accruing during their ownership of stock, and have an equity in any surplus over such an amount still in the hands of the creditors' receiver, yet the facts to establish such rights must be adduced by them in order to procure relief. The situation is analogous to relief given on *audita querela,* where facts are shown to abate or reduce the amount to be paid upon a common-law judgment. The case of *People ex rel. Barrett* v. *Farmers State Bank,* 371 Ill. 222, has no application, as that case involved rights of all stockholders to a refund after the debts of the bank had been fully paid.

The petition filed in this case does not disclose the amount of money or property, if any, still in the hands of the creditors' receiver, except what may be inferred from exhibits contained in the record. The report of the creditors' receiver attached to the petition for disbursing collections discloses $30,952 was collected for such period, and $25,436.48 was turned over to the liquidating receiver for disbursement to the creditors of the bank. It also shows certain disbursements amounting to $5515.52. And the petition of the creditors' receiver to disburse and pay over money to the Auditor's receiver discloses that he had on hand real estate and other assets of the value of approximately $13,500. There is nothing in the record to show the disposition of this property.

The case was disposed of upon motion to dismiss, which among other things sets out the receiver had distributed all money obtained from stockholders, and there were no longer any such funds in his hands. The motion to dismiss also affirmatively alleges the amounts paid by appellants were *res judicata,* as shown by the records of the trial court. A substantial portion of the motion to dismiss consists of references to trial court orders and

decrees, which are not set out in the motion. Neither is the motion verified.

Section 48 of the Civil Practice Act provides a motion to dismiss may be made when certain specified defects appear upon the face of the complaint, and that a motion to dismiss upon the grounds set out in said section may be made when they do not appear upon the face of the complaint, where supported by affidavits. In case a motion to dismiss is made for matters not appearing in the complaint, supported by affidavit, the opposite party may present counter affidavits. And it is further provided raising such defenses by motion shall not preclude them from being subsequently raised by answer. Most of the matters set out in the motion to dismiss does not appear upon the face of the complaint, and is not supported by affidavit, and therefore is not in compliance with, section 48 of the Civil Practice Act. However, the motion to dismiss does set forth the petition is insufficient in law or fact upon which to base relief.

The circuit court and Appellate Court have disclosed by their respective opinions they did not base their judgments upon the petition being generally insufficient, but upon matters set forth affirmatively and not supported by affidavit. We are unable to determine from the record presented to us whether there is any money or property in the hands of the creditors' receiver, nor are we able from the record to determine whether any of the matters claimed to be a defense, and set forth without verification, and largely by way of conclusion, are available. The record does disclose apparently there were some funds or property on hand at the time appellants' petition was presented, but whether it will be available for distribution is not apparent, because, included in the total amount disclosed by the creditors' receiver's report, were funds derived from persons other than appellants, which might or might not affect their right to recovery by way of refund.

We are convinced, however, as a matter of law, the Appellate Court was in error in holding that all amounts collected from stockholders under their constitutional liability might be distributed to all of the bank creditors generally; and likewise in error in holding that by the obtaining of judgment against appellants for stockholders' liability the nature of the obligations was changed by that fact alone. Under such holding it was not material how much money had been collected from the stockholders, to whom it is paid, or whether any surplus remained in the hands of the creditors' receiver. This was error.

The judgments of the Appellate Court for the Third District and of the circuit court of Piatt county are therefore reversed, and the cause remanded to the circuit court of Piatt county to proceed in a manner not inconsistent with the views expressed herein.

*Reversed and remanded.*

Mr. JUSTICE FULTON took no part in the consideration or decision of this case.