Frank P. Burnett et al., Appellees, v. Garfield State Bank et al., Defendants. Howard R. Baldwin et al., Appellants.

Gen. No. 42,904.

Opinion filed November 6, 1944. Released for publication November 24, 1944.

CAMPBELL, CLITHERO & FISCHER, of Chicago, for appellants.

JOHN C. DEWOLFE and MCINERNEY & POWER, all of Chicago, for appellees.

· MR. JUSTICE SCANLAN delivered the opinion of the court.

A proceeding to enforce the superadded liability of stockholders of the Garfield State Bank, *a corporation whose existence was terminated on November 12, 1929.* The decree, entered upon a master's report, directs the defendants who prosecute this appeal to pay to the receiver the respective amounts for which they were found to be liable. The said defendants, the amount entered in the decree as to each, and the number of shares that each was liable on, appear from the following table:

| Name of Defendant | Amount of Decree | Number of Shares Liable on |
|---|---|---|
| Howard R. Baldwin | $ 500 | 5 |
| Delbert A. Clithero | 2,700 | 79 |
| Charles .E. Erich | 100 | 1 |
| John H. Kenna | 2,000 | 23 |
| T. A. Jackson | 8,300 | 108 |
| A. A. Marquart | 5,500 | 115 |
| Frank P. Ross | 700 | 7 |
| Wirt Wright | 1,000 | 10 |

The decree did not exact full liability on the shares held by defendants Clithero, Kenna, Jackson and Marquart, because credit was given on the liabilities which accrued during the period the said defendants held their stock, on account of payments made by the receiver from dividends (44%) in the dissolution suit and by payments made by contemporaneous stockholders.

The Garfield State Bank was organized on June 6, 1913, under the name of Garfield Park State Savings Bank, with a capital of $200,000, which was increased from time to time to a capital of $600,000, divided into 6,000 shares of stock of $100 each. The name of the bank was changed to Garfield State Bank, which is frequently referred to in the record as the old Garfield State Bank. It continued to do business as a bank until November 12, 1929, when it was consolidated with the West Madison State Bank under the name of Garfield State Bank (hereinafter sometimes called the consolidated Garfield State Bank). On that date the auditor of public accounts issued a new charter to the consolidated Garfield State Bank, which had a capital of $800,000. This bank continued to do business until June 11, 1931, when it was closed by the auditor of public accounts, who appointed a receiver of the bank on August 12, 1931. On August 19, 1931, the auditor filed a bill for its dissolution in the Circuit court of Cook county. Defendant Clithero was president, defendant Marquart was vice president, and defendant Kenna was cashier of both the old Garfield State Bank and the consolidated Garfield State Bank. Defendants Ross and Jackson were directors in both banks, and Ross was chairman of the board of directors of the consolidated Garfield State Bank.

In their brief the defendants (appellants) state: "The only question we urge in this appeal is whether the case of *Madigan Bros., Inc. v. Garfield State Bank* constitutes a former adjudication in bar of the present

suit," and they contend: "The proceedings and decrees in *Madigan, et al. v. Garfield State Bank, et al.,* Superior Court Number 542554 as to the defendants appealing are *res adjudicata* of every issue involved in the instant case, as every one of these defendants was a party to the *Madigan* suit, and if there is any issue herein not decided in the *Madigan* case, it was clearly within the issues and could have been decided in that case. A. The liability of a bank shareholder in a state bank in Illinois to the creditors of the bank is a single liability to all the creditors as a class limited by (1) the par value of his stock; and (2) the unsatisfied liabilities of the bank that accrued while he was a shareholder. B. The doctrine of *res adjudicata* extends not only to the questions which were actually decided in the former case but to the whole controversy; to all matters properly involved which might have been raised and determined, and to all grounds of recovery or defense that the parties might have presented, whether they did or not. C. It is not material whether the former decree was erroneous or correct. It stands until reversed or modified in a direct proceeding and may not be collaterally attacked. D. The rule of *res adjudicata* applies with equal force to representative suits when the remedy is pursued by a plaintiff who had the right to represent the class to which he belonged, and all other members of the class are bound by the judgment in the case until it is reversed or set aside in direct proceedings for that purpose. E. Counsel for plaintiffs in a representative suit, after adjudication of the rights of the class, may not procure the vacation of the judgment or decree, select another member of the class with a different name as a representative plaintiff and prosecute another representative suit."

Plaintiffs' answer to defendants' contention is: "Plaintiffs' theory of the case is that there was no former adjudication in the *Madigan* case of the liabili-

ties of the defendants in the present case. Two of the present defendants, Baldwin and Wright were voluntarily dismissed, in accordance with law, from the *Madigan* case on March 24, 1934. As to the other defendants herein on the same date, a second amended and supplemental bill of complaint was filed in the *Madigan* case limiting the scope of that suit to their stockholdings in the consolidated Garfield State Bank. The decrees and orders in the *Madigan* case fixing and determining the liabilities of the defendants herein, other than Baldwin and Wright, were clearly confined to their stock in the consolidated bank. The consolidated Garfield State Bank and the old Garfield State Bank were two separate and distinct banking corporations; their creditors and liabilities were separate and distinct. There is no precedent in the reviewing court of this state for a single stockholders' liability suit to enforce the liability of the stockholders of two distinct banking corporations. The liability of the defendants herein was not a single liability to the creditors of either the old Garfield State or the consolidated Garfield State Bank, as a class, but to the creditors of each bank, whose claims accrued during the time the respective defendants held their stock. Plaintiffs did not split their cause of action against defendants or either or any of them, but pursued two distinct causes of action, as they had a perfect right to do. Defendants in the *Madigan* case strenuously objected to a single suit to enforce the liabilities of the stockholders of both the old Garfield State Bank and the consolidated Garfield State Bank. They are now estopped from questioning in the present case, the procedure in the *Madigan* case.''

The *Madigan* case, which is the sole basis for defendants' appeal, was commenced in the Superior court of Cook county on September 3, 1931, and the original bill sought to enforce the liabilities of all of the stockholders of both the old Garfield State Bank and the

consolidated Garfield State Bank from the organization of the bank in 1913 down to June 11, 1931, the date on which the bank ceased to do business. The first amended and supplemental bill filed in that case was not materially different from the original bill save that it purported to be a consolidation of various bills filed by other creditors for the purpose of enforcing liabilities of the stockholders of the Garfield State Bank. In demurrers and answers filed by certain defendants to the original and first amended and supplemental bill it was alleged, *inter alia,* that the consolidated bank was a separate and distinct corporation from the old Garfield State Bank and the West Madison State Bank and that its creditors were different, and that the complainants had no legal right to enforce the liabilities of the old Garfield State Bank in the *Madigan* proceeding. The demurrers were overruled and the defendants who filed them were ordered to answer the first amended and supplemental bill of complaint. A typical answer is that of James Stirling, Jr., et al., wherein they aver "that on November 12, 1929, there was a statutory consolidation of the West Madison State Bank with the Garfield State Bank and that all of these defendants have disposed of their stock in the said Garfield State Bank prior to its consolidation and by reason thereof are not liable as stockholders to the creditors of the consolidated Garfield State Bank." After the case was at issue it was referred to a master, who began hearings on August 7, 1933. During the hearings counsel for certain of the defendants continued to raise the point made by Stirling, Jr., et al. in their answer. Defendants (appellants), in their brief, deny that any of them raised the point in the *Madigan* case that the liabilities of the old Garfield State Bank and the consolidated Garfield State Bank could not be adjudicated in the one suit. The record shows, however, that they did not in any apt way assert the position they now take, nor did they file any objec-

tions to the master's report based upon their instant theory that the bill of complaint in the *Madigan* case split the cause of action against them, nor did they appeal from the decree of July 16, 1936, that affirmed the master's report, and plaintiffs call attention to the fact that defendants Jackson, Ross and Erich, before the decree was entered in the *Madigan* case; upon petitions filed by them, were allowed to settle their liabilities as stockholders in the consolidated Garfield State Bank for approximately 70 cents on the dollar; that as to the three defendants, Clithero, Marquart and Kenna, against whom decrees were entered in the *Madigan* case, Clithero settled for 25 cents on the dollar his liabilities to the consolidated Garfield State Bank; Marquart settled for 10 cents on the dollar, and Kenna paid nothing. As Baldwin and Wright had been voluntarily dismissed from that case, no decretal order was entered as to them. To follow up the history of the *Madigan* case: On March 24, 1934, the complainants, after due notice, filed their verified petition for leave to file instanter a second amended and supplemental bill of complaint, ''and for the entry of an order dismissing out of the cause and proceedings, without prejudice, all defendants heretofore made parties to this cause, who held no stock in the Garfield State Bank . . . after the consolidation . . . with the West Madison State Bank.'' The petition alleges, *inter alia,* the reference to the master, that various hearings were held before him at which various parties produced evidence and introduced exhibits, and that proof before the master had been closed; that the contention has been advanced by defendants in the cause that the consolidated Garfield State Bank, existing after November 12, 1929, was a separate and distinct corporation from the old Garfield State Bank, and that the liabilities of the stockholders in the two institutions cannot be enforced in a single action, nor can such stockholders be joined in a single suit; that complainants bring the

proceedings in a representative capacity, on behalf of themselves and all other creditors of the Garfield State Bank, which closed its doors on or about June 11, 1931, and therefore regardless of the correctness of the contention advanced, complainants consider it their duty to so conduct the suit that they will not in any way hazard the enforcement of the liabilities in behalf of creditors or stockholders of the Garfield State Bank, which closed its doors on or about June 11, 1931, with liabilities aggregating a far greater total in amount than the aggregate of the liabilities of stockholders holding stock in the Garfield State Bank prior to November 12, 1929, and that in view of said contentions, complainants deem it to the best interest of the creditors, whom they represent, to confine the proceedings to the determination of liabilities of stockholders holding stock in the Garfield State Bank, on or subsequent to November 12, 1929, in accordance with the second amended and supplemental bill of complaint, "which complainants ask leave to file herein instanter and to dismiss out of these proceedings, without prejudice, all defendants named therein, who held no stock in the Garfield State Bank from and after November 12, 1929." The petition avers that petitioners were not fully apprised of all of the circumstances connected with the so-called consolidation at the time of the filing of the amended and supplemental bill of complaint and that they have taken advantage of the earliest opportunity since said matters and the said contention were brought to their notice, to direct the court's attention thereto, and that it would be unjust and unfair to the complainants represented by the petitioners to require them to proceed to a decree without permitting them to file a second amended and supplemental bill of complaint to conform to the evidence produced before the master. The petition prays that petitioners be given leave to file their said complaint; that defendants be ordered to answer and that an order be en-

tered dismissing out of the cause without prejudice certain parties named in the amended and supplemental bill of complaint, naming, among others, two of the present defendants, Howard R. Baldwin and Wirt Wright. The petition asked that the order closing proofs before the master be set aside, the case reopened, and that the filing of the second and amended supplemental bill be without prejudice to the reference. On the date that the petition was filed, March 24, 1934, an order was entered giving leave to complainants to file instanter their second amended and supplemental bill to conform to the evidence offered before the master and without prejudice to the reference; that defendants answer within twenty days, or allow their answers to the first amended and supplemental bill to stand; that the order closing proofs before the master be set aside and leave be given to the parties to introduce further evidence. The order provides *that some 338 defendants, including Howard R. Baldwin and Wirt Wright, appellants, are dismissed out of the cause,* "with prejudice in so far as these proceedings are concerned." There is nothing in the record to show that the instant defendants objected to the granting of the prayer of the petition. The second amended and supplemental bill of complaint in the *Madigan* case alleges "that it is brought in lieu of the bills of complaint hereinbefore filed by the above complainants, and heretofore consolidated," *and that where the term "Garfield State Bank" is used in the complaint, it is intended to designate the bank formed by the consolidation on November 12, 1929.* Paragraph 8 sets out the names of the defendants, the stock which they held, and the period of time it was held. Among the defendants named are Delbert A. Clithero 663 shares, Charles E. Erich 4 shares, T. A. Jackson 13 shares, J. H. Kenna 22 shares, A. A. Marquart 100 shares, Frank P. Ross 1065 shares. All of these shares were held by said defendants at the closing of the bank on June 11, 1931, with

the exception of ten shares that Marquart disposed of on December 6, 1930. Howard R. Baldwin and Wirt Wright, appellants, do not appear in the list. *The final decree in the Madigan case provides that wherever the name "Garfield State Bank is used it refers only to the banking corporation created on November 12, 1929."* That decree ordered Clithero as the holder of 663 shares to pay $66,300, Kenna as the holder of 22 shares to pay $2,200, and Marquart as the holder of 100 shares to pay $10,000. On October 28, 1937, under court order, Marquart settled the decree against him for $1,000 and the decree as to him was satisfied of record; on September 1, 1940, Clithero settled the decree against him for $66,300 for $15,500, and the decree as to him was satisfied of record; Kenna paid nothing on the decree against him. Baldwin and Wright had been dismissed as defendants on March 24, 1934. They were, of course, not decreed to pay anything in that case. All of the defendants who parted with their stock prior to November 12, 1929, were dismissed from that case under a court order of March 24, 1934. It seems appropriate to state at this point that not one of the hundreds of defendants impleaded in the *Madigan* case and who were adjudged to pay the amounts for which they were held liable, appealed from the decree entered in that case.

Sec. 6 of Art. XI of the Constitution [Jones Ill. Stats. Ann. vol. 1, p. 473] of this State provides: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." Defendants state that "The language of the constitution was specifically construed in *Heine v. Degen*, 362 Ill. 357, where the Supreme Court held that the liability of a stockholder created by the constitution was a liability

to all of the creditors of the bank generally, the amount of which is limited first by the par value of his shares and, second, by the total amount of liabilities accruing while he or she remain such stockholder,'' and they contend, ''From the foregoing principles it is clear that the bank stockholders' liability is not a liability upon certain specific shares of stock, nor is it a liability to specific individual creditors for individual deposits made in any given period. On the contrary, it is a direct liability to the creditors of the bank as a class and the number of shares held and the liabilities accruing during the period of ownership are but measures of or limitations upon the amount for which the stockholder can be held liable. Manifestly a liability of this character cannot properly be split up or divided either upon the basis of the shares represented by a particular certificate of stock nor the liability accruing in some particular period in the history of the bank. This proposition is also established by the decision in *Heine v. Degen*, 362 Ill. 357, where the court held (page 375) that the theory of certain stockholders that the bank should be separated into two distinct banks before and after reorganization was fallacious. This proposition alone should be conclusive of the case at bar.'' The logical effect of defendants' argument is that under the ruling in the *Heine* case it was the duty of complainants in the *Madigan* case to enforce in that proceeding the superadded liability of all of the stockholders from the organization of the bank in 1913 to its closing in 1931; that they failed in that regard, and therefore the doctrine of *res judicata* applies to the proceedings in the instant case. In *Holderman v. Moore State Bank*, 383 Ill. 534, the court distinctly states that it was not intended in *Heine v. Degen* to overrule its former rulings in the well known case of *Golden v. Cervenka*, 278 Ill. 409. In the opinion in the *Holderman* case the court states (pp. 539, 540, 541, 542):

"Probably the most exhaustive discussion of the question of when a stockholder is liable and for what he is liable is to be found in *Golden v. Cervenka,* 278 Ill. 409. In that case it is repeatedly pointed out that the stockholder of a bank is liable only for the debts accruing during the time he is a stockholder, and is not liable for any debts accruing before he is a stockholder, or after he has ceased to be a stockholder. We said: 'The constitutional liability of the stockholders to the bank's creditors is "for all its liabilities accruing while he or she remains such stockholder." . . . Under the constitution and the statute the stockholder is responsible to the amount of his stock for all the liabilities of the bank which are incurred during his ownership of stock and no more, and such responsibility continues until the liability is paid or otherwise discharged.'

" . . .

"It is thus to be observed that in *Golden v. Cervenka,* 278 Ill. 409, the court not only held it was erroneous to hold stockholders for liabilities accruing prior to the time of becoming stockholders, but also said the stockholder is liable for only such debts as accrued during his ownership of stock. In the *Sanders* case [*Sanders v. Merchants State Bank,* 349 Ill. 547] it limits the liability more precisely by saying the stockholder remains liable after the transfer of stock to the same extent as before, but not for any debt subsequently accruing, and repeatedly announces the stockholder is responsible to the amount of his stock for all of the liabilities incurred during his ownership and no more.

"There is no indication *Heine v. Degen,* 362 Ill. 357, was intended to overrule this interpretation of the stockholder liability, because in *Comstock v. Morgan Park Trust and Savings Bank,* 363 Ill. 341, we said: 'Nearly twenty years ago this court in unmistakable language in *Golden v. Cervenka,* 278 Ill. 409, inter-

preted section 6 of article XI of the State constitution, relating to stockholders' liability. In at least three later cases we have announced our adherence to the views expressed in *Golden v. Cervenka.* Hundreds of cases involving that liability have been before the circuit, superior and Appellate Courts of this State. . . . Millions of dollars have been paid on the strength of them, and it would be destructive of the stability of the decisions of this court to further permit reiterations of the claim that the meaning of section 6 of article XI of the constitution is in doubt or is undetermined.'

" . . .

"The holding in *Heine v. Degen* and *Hillmer v. Chicago Bank of Commerce,* [375 Ill. 266] so far as it affects the liability of a contemporaneous group of stockholders, is confusing. The correct rule of liability is set out in *Golden v. Cervenka, Sanders v. Merchants State Bank* and *Burket v. Reliance Bank and Trust Co.* [366 Ill. 98]. With this measure of liability thoroughly established it would be inaccurate to say a stockholder is liable to any other creditor of the bank than one whose debt accrued while he is a stockholder, and to say that such stockholder is liable to all of the creditors of the bank would render him responsible to creditors who existed both before and after the time he was a stockholder, which is directly contrary to the established rule of a stockholder's liability.

"To the extent that *Heine v. Degen* apparently makes a stockholder for a given period liable for debts which accrued before or after his period of stock ownership it is inaccurate, and consequently is not adhered to."

It follows, from the holding in the *Holderman* case, that the defendants in the instant case were not liable to the creditors of the old Garfield State Bank or the consolidated Garfield State Bank, as a class, but only to creditors of either bank whose claims accrued during the time that the respective defendant held his

stock. Neither the *Heine* case nor the *Holderman* case
is an authority in support of defendants' contention
that the constitutional liabilities of the stockholders
of the old Garfield State Bank and the stockholders of
the consolidated Garfield State Bank must be deter-
mined in one suit. But defendants contend that the
court in *Heine v. Degen* laid down the rule that the
proper practice was for all creditors to join all of the
stockholders in one suit to enforce their constitutional
liability and that this holding was reaffirmed in *Hold-
erman v. Moore State Bank.* What we have hereto-
fore stated as to the effect of the holding in the *Hold-
erman* case applies with equal force to the instant con-
tention. In support of their contention defendants
rely upon the following language in the *Heine* case (p.
375):

"The theory as to withdrawals held by the appel-
lants, under which they would separate the bank into
two distinct banks, that before and that after the re-
organization of February 15, 1929, is fallacious. It
must be treated as one bank, and the rule that the first
money deposited is the first withdrawn must be ap-
plied, as it was by the chancellor, from the founding of
the bank."

But the court also states (pp. 360, 361):

"The facts found by the decree were: The Ameri-
can State and Savings Bank was organized April 3,
1911. The name was changed January 11, 1921, to the
Legris Trust and Savings Bank, and on February 20,
1929, to the American Trust and Savings Bank of
Kankakee, Illinois. The capital stock was increased
on the last named date from $100,000 to $150,000. The
stockholders of record received one share of stock in
exchange for two shares previously held by them and
the remaining $100,000 of stock was sold. On Decem-
ber 27, 1929, the bank suspended business, and on Jan-
uary 23, 1930, because the bank's capital was hope-

lessly impaired, the Auditor of Public Accounts appointed Fred G. Snow receiver.''

It appears, therefore, that there was no consolidation of banks involved in the *Heine* case, nor was there any consolidation of banks in the *Holderman* case. The liability of the stockholders of the West Madison State Bank was determined in *Burnett v. West Madison State Bank,* 375 Ill. 402. The opinion in that case states the facts as to the consolidation of the West Madison State Bank and the Garfield State Bank on November 12, 1929, the closing of the Garfield State Bank by the auditor on June 11, 1931, without having paid all of the indebtedness of the West Madison State Bank; that in August, 1937, Frank P. Burnett, a depositor of the West Madison State Bank and a creditor of that bank at the time of the consolidation, filed a complaint to enforce the superadded liabilities of the stockholders of the West Madison State Bank, and that the suit was prosecuted as a representative action. The opinion then states (p. 404): ''Appellee Novak, a stockholder of the bank, owning five shares from February 10, 1925, to February 9, 1928, moved to strike the amended complaint and dismiss the suit on the grounds (1) . . . and, (2) that by the consolidation proceeding the Garfield State Bank had assumed the liabilities of the West Madison State Bank and, by operation of law, the stockholders were thereby discharged from the constitutional liability.'' The court states (pp. 410, 411): ''The appellant [Burnett], as a depositor of the West Madison State Bank, was in no position to prevent the consolidation and it does not appear from the complaint that he consented to the release of the liability of that bank and the substitution of the Garfield State Bank as his debtor. The facts alleged are consistent with the idea that he might have intended to look to both banks for payment. In the absence of clear proof of novation, the fact of consolidation would make the Garfield State

Bank an additional debtor and, by accepting part payment from the additional promisor, the claim would not be relinquished against the former bank or the liability of its stockholders thereby discharged. The fact that the creditor knew of the consolidation and received part payment from the consolidated bank would not constitute a novation as a matter of law. *Walker v. Wood, supra* [170 Ill. 463]; 87 A. L. R. 281.'' See, also, *Continental Casualty Co. v. Hein*, 368 Ill. 289, 293; and the same case in 297 Ill. App. 643 (Abst. opinion), where the Appellate court said: ''The obligation of the Milwaukee Bank was not wiped out by its consolidation with another corporation.'' The court, after quoting from the Banking Act (chap. $16\frac{1}{2}$, sec. 12, Ill. State Bar Stats., 1937, p. 195 [Jones Ill. Stats. Ann. 10.13]), continues: ''On principle it would seem that as against plaintiff these eighteen stockholders of the Milwaukee-Western State Bank are liable if (as is alleged in plaintiff's third amended complaint) the indebtedness of that bank to plaintiff accrued during a period of time in which these defendants were holders of stock in the Milwaukee State Bank. It may well be (as cases cited by defendants indicate) that after the consolidation the Armitage State Bank by reason thereof was liable to plaintiff for this indebtedness in case plaintiff elected to enforce the liability. It would by no means follow that these eighteen were released from their liability. . . . If the suit should have been dismissed as to these two defendants, it nevertheless was error to dismiss it *for want of equity* as to the other defendants who were stockholders of the Milwaukee-Western State Bank who never became stockholders of the consolidated bank and who were not defendants to the bill brought to enforce their liabilities as stockholders of that bank.'' The contention of plaintiffs that ''the consolidation of the West Madison State Bank and the old Garfield State Bank did not release their stockholders from liability,'' is sound; in

fact, the defendants do not seem to contend otherwise, as their sole ground for the reversal of the instant decree is based upon the doctrine of *res judicata*. The statement of plaintiffs that "there is no precedent in the reviewing courts of this State for a single stockholders' liability suit to enforce the liabilities of the stockholders of two distinct banking corporations," seems to be warranted. In any event, defendants have failed to cite a single case, akin to the instant one, that sustains their contention. As many of the defendants in the *Madigan* case insisted, the old Garfield State Bank and the consolidated Garfield State Bank were separate corporations, and the liability of the stockholders of the old Garfield State Bank and the liability of the stockholders of the consolidated Garfield State Bank involved two distinct causes of action. Why should the creditors of the old Garfield State Bank in a proceeding brought by them against the stockholders of that bank be compelled to assume the burden of litigating the rights of the creditors of the consolidated Garfield State Bank against the stockholders of that bank? As we have heretofore stated, defendants Clithero, Kenna and Marquart made no affirmative objection to the procedure finally followed in the *Madigan* case; indeed, their actions in that case indicated that they were satisfied with the procedure finally followed and with the decree so far as it affected them.

Other points in support of their sole contention are raised by defendants, but it would unduly extend this already lengthy opinion to answer all of them. Suffice it to say that we find no real merit in any of them.

Defendants in the instant case were not called upon to pay the same liabilities twice. Indeed, their sole defense is based upon the theory that the doctrine of *res judicata* applies because the plaintiffs should have enforced their claims in the instant suit in the *Madigan* case. The following table shows that the instant suit was brought to enforce payment only upon shares of

stock that were eliminated by the second amended and supplemental bill in the *Madigan* case:

| Name of Appellant | No. of Shares Involved in First Amended Bill in the Madigan Case | No. of Shares Involved in Second Amended Bill in the Madigan Case | No. of Shares Involved in Complaint in the Instant Suit |
|---|---|---|---|
| Howard R. Baldwin | 5 | 0 | 5 |
| Delbert A. Clithero | 742 | 663 | 79 |
| Charles E. Erich | 5 | 4 | 1 |
| T. A. Jackson | 131 | 23 | 108 |
| John H. Kenna | 45 | 22 | 23 |
| A. A. Marquart | 205 | 100 | 115 |
| Frank P. Ross | 1,072 | 1,065 | 7 |
| Wirt Wright | 10 | 0 | 10 |

In the first amended and supplemental bill of complaint the number of shares held by Marquart in the old Garfield State Bank and in the consolidated Garfield State Bank was erroneously stated as 205, but the correct number was 215. A great many other defendants were impleaded with the appellants in both suits. Plaintiffs state: ''The numerous other defendants in both the *Madigan* case and this case were content to pay or to settle the decrees against them without appeal;'' and ''Defendants, who were officers and directors of these banks [the old Garfield State Bank and the consolidated Garfield State Bank] were directly responsible for the enormous losses to the creditors of these banks. They have resisted attempts of creditors to enforce stock liability against them for more than twelve years. They have profited by payments made by contemporaneous stockholders and are now resisting upon an outworn theory that their liabilities were adjudicated in the *Madigan* case, or at least might have been adjudicated.'' Defendant Delbert A.

Clithero was president of the old Garfield State Bank and the consolidated Garfield State Bank. The creditors of the two banks suffered great losses. The decree in the *Madigan* case, entered April 6, *1936,* ordered Clithero as the holder of 663 shares of stock to pay to the receiver $66,300. As he did not appeal from that order he, impliedly at least, admitted the justice of it. On September 1, *1940,* he settled that decree against him for $15,500. In view of the leniency that was extended to him in the *Madigan* case, it would seem that he would have cheerfully paid the just judgment against him in this case, instead of presenting a defense that is lacking in equity. What we have just stated as to Clithero applies also to the other bank officers who have appealed. None of the numerous defendants in the *Madigan* case appealed from the decretal judgment entered against them. Of the many stockholders impleaded with the defendants in the instant case, only eight have appealed; five of these were officers in the old Garfield State Bank and the consolidated Garfield State Bank, and the total of the decretal judgments against the other three appellants is only $1,600. $1,500 of that amount is against two defendants, Baldwin and Wright, who were dismissed from the *Madigan* case, and the sole defense interposed for them, *res judicata,* hardly merits serious consideration.

After a careful consideration of this appeal we have reached the conclusion that there is no equitable reason why the decree of the Superior court of Cook county against the defendants (appellants) should be reversed as to them, and it is accordingly affirmed as to them.

*Decree affirmed as to defendants (appellants).*

SULLIVAN, P. J., and FRIEND, J., concur.